## GREEN v. McGREW.

[No. 4,889. Filed January 3, 1905. Rehearing denied March 16, 1905.]

1. EVIDENCE.—*Title.*—*Tax Deeds.*—*Description.*—A tax deed, properly executed, is *prima facie* evidence of the regularity of a tax sale and of a fee-simple title in the grantee, but such evidence is not sufficient to establish title where the description in such deed fails to describe the land with reasonable certainty.   p. 110.

2. SAME.—*Tax Deeds.*—*Description as of Record.*—The fact that the description in a tax deed is the same as had been used on the records for taxation for many years will not cure such deed when such description is in fact insufficient.   p. 110.

3. DEEDS.—*Description.*—*Taxation.*—A defective description in a tax deed is fatal.   p. 111.

4. SAME. — *Taxes.* — *Certificate of Sale.* — *Records.* — *Description.* — Where the description of land in the tax records and the certificate of sale is inadequate, a tax deed, executed pursuant to such certificate, though it contains a complete description, is void.   p. 112.

5. TAXATION.—*Maxims.*—*Applicability.*—The maxim *"de minimis non curat lex"* does not apply to tax sales.   p. 112.

6. SAME.—*Tax Sales.*—*Excessive Amount of Taxes.*—*Validity of Sale.* —A sale of lands for $43 taxes is void where the correct amount of tax was $42.92, six cents being purposely added by the taxing officers and two cents being unaccounted for.   p. 112.

7. EVIDENCE.—*Tax Deed Unattested by Treasurer.*—A tax deed unattested by the county treasurer is not *prima facie* evidence of title.   p. 114.

8. TAXATION.—*Tax Deeds.*—*Execution.*—*Special Finding.*—The special finding, in order to support the execution of a tax deed, must show that such deed was signed, witnessed and acknowledged by the persons designated by statute.   p. 115.

9. TRIAL.—*Special Finding.—Intendment.*—A special finding must contain all of the facts. Nothing can be supplied by presumptions or intendments. p. 115.

10. TAXATION.—*Tax Deed.—Failure of Title.—Lien for Taxes.*—A tax deed, void as to the conveyance of title, carries the lien of the State for taxes, and such taxes become a lien in favor of the grantee. p. 115.

11. APPEAL AND ERROR.—*Reversal.—Petition for Rehearing.—Modification of Mandate.*—A reversal with instructions to render judgment for appellant will be modified where the petition for a rehearing shows that the condition of the parties has been materially changed since the trial and that such judgment would work an injustice. p. 115.

From Huntington Circuit Court; *Levi Mock,* Special Judge.

Action by William McGrew against George S. Green. From a decree for plaintiff, defendant appeals. *Reversed.*

*Spencer & Branyan,* for appellant.
*Kenner & Lucas,* for appellee.

BLACK, J.—The appellee, as plaintiff, recovered judgment quieting his title as the owner in fee simple to certain real estate, described in the judgment as follows: "Beginning at a point on the east line of Cherry street, sixty-six feet north of John street, running thence in an easterly direction parallel with John street one hundred and fifteen feet, thence northerly at right angles with said line sixty-eight feet, thence westerly parallel with John street to Cherry street one hundred and fifteen feet, thence southerly along the east line of Cherry street to the place of beginning sixty-eight feet; the same being a part of out-lot No. 2 in the original plat of the town (now city) of Huntington, Indiana;" and judgment was rendered in favor of the appellee against the appellant (defendant) for costs.

The court made a special finding, in which the following facts appear: March 28, 1892, one Murphy and his wife conveyed, by warranty deed, to the appellant, real estate in Huntington county, Indiana, described in the deed as in

the judgment herein, which deed was duly recorded March 30, 1892, in the recorder's office of that county, and was entered of record in deed record No. 66, page 8, of the records of that county. The appellant has never been a resident of this State, and has never owned any personal property situated in this State, and, at the time of the finding, he had no other real estate in that county. Out-lot No. 2 in the original plat of the town (now city) of Huntington, of which the real estate described above is a part, was a regularly platted lot in the original plat of that town, and the original plat was duly recorded in the recorder's office of that county. In 1849, one Kenower was the owner of the whole of this out-lot No. 2, and he afterward, at different times, sold and conveyed different parcels thereof to various purchasers, describing the parcels sold by metes and bounds. No subdivision or plat of the out-lot has ever been made or recorded in any public office, fixing the location or size of these different parcels. For convenience in listing for taxation, the county auditor "many years ago" assigned to each of these parcels certain numbers, running from one to ten, so describing the parcels upon the assessment list, duplicates and advertisements for delinquent taxes; and the county auditor, without making any record thereof, for his own convenience, assigned No. 9 to the tract in the out-lot owned by the appellant, described in the judgment herein. It was found that after the several parcels were so sold by Kenower, and prior to the year 1860, they were numbered from one to ten, inclusive; that these numbers were adopted by the several owners for identification, and by the auditor and taxing officers of Huntington county for convenience in listing and assessing taxes, and that this system of numbering "said lots, so adopted," had been maintained for such purposes ever since, and the real estate so described in the judgment herein, and so conveyed to the appellant by Murphy, "had been commonly known and designated on the tax duplicate as lot No. 9 in out-lot

No. 2 in the original plat of the town of Huntington, for forty years;" that on July 16, 1860, John Alexander was the owner of the undivided two-thirds of lots No. 2 and No. 9 according to this system of numbering, and he then deeded to Sylurius W. Alexander an interest in said real estate by the following description: "The undivided two-thirds of lots 2 and 9 in Kenower's division of out-lot No. 2 in the original plat of the town of Huntington, and described as follows: Commencing on Jefferson street at the southeast corner of a lot or tract of land in said town owned by David S. Tuttle, running thence west at right angles with Jefferson street to Cherry street, thence southward on Cherry street 68 feet, thence at right angles and parallel to the first line of Jefferson street, thence north on Jefferson street to the point of beginning;" that this deed was recorded in deed record O, page 347, of the records of Huntington county, and "is of the title deeds through which" the appellant derives his title to the real estate in controversy; that Sylurius W. Alexander deeded said real estate to Keziah E. Alexander, September 20, 1862, as recorded in deed record Q, page 459, by the same description; that Mary M. Frume, Angeline A. Irvin and her husband, and Maria L. Mills deeded said real estate to Edith Alexander, September 1, 1869, as recorded in deed record Z, page 573, by the same description; that Keziah E. Alexander deeded to Sylurius W. Alexander an interest in said real estate by the following description: "Lots 2 and 9 in out-lot 2 in the town of Huntington," this deed being dated October 16, 1866, and recorded in deed record No. 29, page 370; that Sylurius W. Alexander deeded said real estate, November 11, 1869, to Henry Hessin and William Hessin, as recorded in deed record No. 29, page 402, by the same description as that in the above-mentioned deed, recorded in deed record O, page 347. It was found that "all said deeds are severally parts of the title deeds through which" the appellant derives his title to the real estate in controversy; that in

the years 1895 and 1897 the real estate described in the deed of Murphy above mentioned was regularly viewed and appraised for taxation as required by law, and it was designated in such appraisements by the following description: "Lot No. 9 in out-lot No. 2 in the original plat of the town of Huntington," and it was so listed and assessed in the name of the appellant; that this real estate was duly entered on the auditor's and treasurer's tax duplicates for the years 1896 to 1899 inclusive, in the name of the appellant and by the description "Lot 9 in out-lot 2 in the original plat of the town of Huntington." There are a number of findings relating to sales for city taxes to which we need not further refer, inasmuch as the conclusions of law in favor of the appellee are therein expressly based upon a conveyance of the county auditor, and we may confine ourselves to the facts relating to it.

It was found that the state and county taxes for the years 1896 and 1897 on said real estate were returned delinquent for nonpayment of said taxes, and the real estate was duly advertised for sale for such taxes on and before February 13, 1898, and on that day said real estate was duly sold for such taxes, and was purchased by the First National Bank of Huntington, Indiana, for $43; that a penalty of six cents was in November erroneously added to the penalty that accrued in May, and the true amount of delinquent penalty and current tax due at the time of the sale was $42.92; that said purchaser received the statutory certificate therefor, and said real estate was described in said certificate as "In-lot 9 in original out-lot 2 in the city of Huntington, Indiana." The real estate was not redeemed from this sale, and February 21, 1901, the auditor of Huntington county duly executed and delivered to the First National Bank a tax deed for said real estate, which tax deed was in the statutory form, and conveyed the real estate by the following description: "In-lot No. 9 in the original out-lot No. 2 in the city of Huntington, Indiana, as de-

scribed in deed record No. 66, page 8." This tax deed was recorded February 22, 1901, in deed record No. 84, page 509, of the records of Huntington county. October 1, 1902, during the pendency of this action, said First National Bank conveyed all its right, title and interest in the real estate so conveyed to it to the appellee, who was substituted as plaintiff in this action, which had been commenced by the bank as plaintiff after the recording of its tax deed.

The court further found that the tract described in the deed of Murphy was the same as lot No. 9 in out-lot 2, and was the property which was duly listed for taxation in the county offices for the years 1895 to 1902 inclusive; that this tract was regularly listed and assessed for taxation for each of the years from 1895 to 1902 in the books of the auditor of said county in the name of the appellant, and under the description "Lot 9 in out-lot 2 in the original plat of the town of Huntington." It was found that the appellee had paid certain taxes and street improvement assessments, set forth in detail in the finding. It was also stated in the finding that "Lot 9 in out-lot 2 in the original plat of the town of Huntington," is a description which has been carried on the records and through the deeds of Huntington county for more than forty years, "and that such description and that set out by deed record No. 66, page 8 [the deed of Murphy to the appellant], and the tax deeds of the plaintiff in this case, is sufficient to locate and definitely describe the land, and that a competent surveyor can locate the same;" that the land described in the complaint herein and in the deeds mentioned in these findings was duly subject to taxation at the date of the assessment of the taxes thereon; "that the taxes, for the nonpayment of which the land was sold, were unpaid, and that the land had been duly assessed for the taxes for which it was sold, and that the said land had never been redeemed according to law, and no certificate in proper form had or has been issued by the proper officer within the time limited by law for paying

taxes, or for redeeming from sales made for the nonpayment of taxes, or these taxes, stating that no taxes were due at the time such sale or sales were made, or any such certificate issued stating that the land in controversy was not subject to such taxation."

The court stated the following as conclusions of law: (1) That the tract of land described in the deed of Murphy, as above shown, is the same real estate described in the various public records for the collection of taxes as lot No. 9 in out-lot No. 2 in the original plat of the town of Huntington, and that this description is a sufficient description to identify the real estate described in the deed of Murphy; (2) that the deed from the auditor of Huntington county, dated February 21, 1901, to the First National Bank of Huntington, Indiana, conveyed a good and sufficient title to certain real estate, describing it, the description being that above set forth as the description in the judgment herein, and in the deed of Murphy; (3) that the appellee is the owner of said real estate, and has title thereto in fee simple; (4) that upon the facts found, as above stated, the law is with the appellee, and he ought to have his title quieted in and to the real estate described in conclusion number two, above set out, and that he recover of the appellant his costs in and about this cause laid out and expended.

1.   Our statute (§8624 Burns 1901, Acts 1891, p. 199, §206) provides that the tax deed, executed as prescribed, shall be *prima facie* evidence of the regularity of the sale of the premises described in the deed, and of the regularity of all prior proceedings, and *prima facie* evidence of a good and valid title in fee simple in the grantee. Such *prima facie* evidence is not sufficient to establish title where it is affirmatively proved that in the sale or conveyance the description was so imperfect as to fail to describe the land or lot with reasonable certainty. *Brown* v. *Reeves & Co.* (1903), 31 Ind. App. 517.

2.   If the descriptions in all the papers and books and

advertisements of the taxing officers prior to the execution of the tax deed were radically insufficient, we apprehend that the mere fact that those officers had so employed such descriptions for a number of years would not cure them of their inadequacy for the purposes of the tax deed. The appellant received from his grantor a deed of conveyance in which the real estate was described by metes and bounds, and was stated to be a part of out-lot No. 2 in the original plat of the town (now city) of Huntington, Indiana, no reference being made to any numbered lot or in-lot in such out-lot. It does not appear that he had any notice of the designation of separate parcels of the out-lot by numbers, except what, if any, might be inferred from the mere use of such descriptions by the taxing officers, and the existence of such numbers in certain deeds of conveyance from owners of some portions of the out-lot, which deeds of conveyance were deeds through which he derived his title. Such descriptions, so far as they employed only such numbers of lots in the out-lot to indicate the property conveyed, were manifestly misdescriptions. The only ones of such deeds shown to have descriptions by metes and bounds purported to describe lots No. 2 and No. 9 in the out-lot, and the metes and bounds employed indicated for the two lots a width the same as the one parcel conveyed by Murphy to the appellant, and it can not be known from such description of the two lots by metes and bounds that either of those lots was the land conveyed to the appellant.

3. In the matter of description of real estate, there is between deeds of conveyance executed by owners, and tax deeds made by officers and based upon the prior performance of official acts, an important difference. Faulty descriptions in the deed of conveyance of an owner of the land may serve because of the intention of the parties relating to the particular real estate so conveyed; but, in the case of a tax deed, mere intention can not be thus effectual, and mutual mistake will not cure a radically insufficient

description. It is not impossible that one, by a sufficient conveyance, as that of Murphy to the appellant, may obtain a good title to land, in some of 'the conveyances of which, executed more than twenty years earlier, and forming links in the chain of title, there were radically defective descriptions, which would be inadequate for the support of a tax title.

4. It will have been observed that, in the execution of the tax deed in question, the description in the taxing papers and books and in the certificate of sale given by the auditor was not treated as an adequate description for the tax deed, and there were added thereto the words, "described in deed record No. 66, page 8;" reference thus being made to the record of the deed of Murphy to the appellant. If such addition were legitimate, such supplementary reference would cure the inadequacy of the preceding portion of the description in the deed; but if in all the previous descriptions of the taxing officers, including that in the certificate of sale, there was insufficiency, the description could not thus be made good in the deed. See 2 Cooley, Taxation (3d ed.), 1000, and notes.

5. It has sometimes been held that in tax sales the maxim, *de minimis non curat lex,* is not applicable, and there is much reason for such a rule, for there is no satisfactory standard for determining what, in such case, should be regarded as a very small sum; and the taxpayer should be strictly protected from all exactions, however small, in excess of what the government, by due, legal processes, has imposed upon him as his share of the public burden. The maxim, when deemed applicable, "is one to be applied with caution." 1 Cooley, Taxation (3d ed.), 591.

6. If the addition of so small an amount as eight cents could certainly be attributed to a mere miscalculation, and therefore could be regarded as unintentional, we might be inclined to regard it as unimportant (see *Burt* v. *Hasselman* [1894], 139 Ind. 196); but such a question is not before

us, for here it appears that the sum of six cents of this amount was purposely added; it being expressly found that "a penalty of six cents was in November erroneously added to the penalty that accrued in May, and the true amount of delinquent penalty and current tax due at the time of sale was $42.92," instead of $43, the amount for which the real estate was purchased at the tax sale.   See *Evansville, etc., R. Co.* v. *West* (1894), 139 Ind. 254.   There is no attempt to account for the additional two cents of the excess.   As to a portion of the excess, there is an affirmative explanation inconsistent with its legality.   It is not a case of a trifling excess in amount in a matter between individuals, but is one of the sale by the government, for its own benefit, of private property, for the payment of a sum, a portion of which taxing officials have added contrary to law.   If such administrative exaction were upheld as against one delinquent landowner, it would be allowable as against all other such landowners in the taxing district; and thereby a large amount, in the aggregate, might be imposed and taken without authority of law.

In *O'Brien* v. *Coulter* (1831), 2 Blackf. 421, it was said, that whenever any authority is given to any person or officer of law, whereby the estates or interests of other persons may be forfeited and lost, such authority must be strictly pursued in every instance; that, in the sale of land for taxes, every substantial requisite of the law must be complied with.   In that case, a sale for taxes, small in amount, where a part of the property conveniently and reasonably could have been detached and sold separately, was held invalid.

In *Doe* v. *M'Quilkin* (1847), 8 Blackf. 335, where there was a sale of land for taxes, amounting to $4.48, of which the sum of eighty cents for county tax was not shown to be authorized by law, the sale for this reason was not upheld. This case was afterward referred to as holding that, unless the land was liable for all the taxes for which it was sold,

the sale could not be sustained.    *M'Quilkin* v. *Doe* (1848), 8 Blackf. 581.    In the case last named, a sale of land for road tax, county tax and state tax could not pass title, because the statute providing for the road tax and prescribing the mode of its collection had been repealed.

In *Hutchens* v. *Doe* (1852), 3 Ind. 528, where land was sold on two executions issued on two judgments in favor of the purchaser, and one of the judgments had been reversed as to the costs, and the sale was made for the payment of these costs, as well as the valid portions of the judgment, it was held that the purchaser did not acquire title.    It was said:    "The execution plaintiff caused the land to be sold for a greater amount than he had a right to make by virtue of his executions, and as he is not a *bona fide* purchaser without notice, he can take nothing by his purchase."    The case was said to be analogous to a sale of land for taxes where the land was not liable for all the taxes for which it was sold; referring to *M'Quilkin* v. *Doe, supra.*

In 2 Cooley, Taxation (3d ed.), 955, it is said:    "It has been shown in a preceding chapter that an excessive levy is void, whether it is made excessive by including with lawful taxes those which are unlawful, or in any other manner. If the levy should be void, there would of course be nothing to uphold a sale.    And if a valid levy were to be increased afterwards by unlawful additions, the sale would be equally bad.    The statutory power is a power to sell for lawful taxes and lawful expenses, and if it is exceeded by including unlawful items of either class, the power is exceeded and its exercise is invalid *in toto* from the manifest impossibility of saving the sale in part when the invalidity extends to the whole.    Nor can the maxim *de minimis* be applied so as to prevent a slight excess from invalidating the sale."    See, also, 27 Am. and Eng. Ency. Law (2d ed.), 837; *Key* v. *Ostrander* (1867), 29 Ind. 1; *Vail* v. *McKernan* (1863), 21 Ind. 421.

7.    A tax deed not witnessed by the county treasurer, as

required by the statute, is not *prima facie* evidence of title. *Gabe* v. *Root* (1884), 93 Ind. 256; *Armstrong* v. *Hufty* (1901), 156 Ind. 606; *Bowen* v. *Striker* (1885), 100 Ind. 45.

8. In *Essex* v. *Myers* (1901), 27 Ind. App. 639, it was said that in a special finding in such a case it should be stated that the tax deed was signed, witnessed and acknowledged by the persons designated by the statute.

9. In a special finding all necessary facts must be stated with reasonable certainty, leaving nothing to be supplied by presumptions or intendments. *Hill* v. *Swihart* (1897), 148 Ind. 319.

10. Though by the auditor's deed of conveyance to the appellee's grantor the title to the real estate did not pass, the grantee, and through him the appellee, acquired the lien of the State, and he may be granted the compensation provided by the statute in such case for his outlays.

Judgment reversed, with an instruction to state conclusions of law in accord with this opinion.

## On Petition for Rehearing.

Black, J.—11. It has been suggested in the appellee's petition for a rehearing that since the finding of the court below the appellee has paid taxes upon the real estate in controversy. In order correctly to determine the amount for which the appellee is entitled to a lien upon the real estate, the court must be properly informed as to the amount of all subsequent taxes paid; and the special finding, therefore, does not show sufficiently all the facts on which to state conclusions of law anew. In order to give occasion for the introduction of evidence of such additional facts, we modify the mandate made on the original hearing, and remand the cause for a new trial.