[No. 6186. Decided August 3, 1906.]

## B. D. HOLCOMB, *Respondent, v.* ESTATE OF JOHN P. JOHNSON, *Deceased, et al., Appellants.*[1]

TAXATION — DELINQUENCY CERTIFICATE — ASSIGNMENT — DURING PENDENCY OF SUIT. A certificate of delinquency may be issued by the county treasurer to an individual who paid the taxes pending a suit by the county to foreclose a general delinquency certificate previously issued to the county, under Laws 1899, p. 305, § 30, providing that county certificates are assignable to such persons; the issuance of such certificate being in effect an assignment of the county certificate.

TAXATION—EXCESSIVE VALUATION—EVIDENCE—SUFFICIENCY. Upon the foreclosure of a tax lien, the evidence is insufficient to show an excessive valuation, where it was stipulated that the lots involved were assessed upon the same basis as other lots of like character in the immediate vicinity, and that certain persons if present would testify that the real values were far below the assessed values; since there was no evidence as to the method pursued in making the assessment, and clear and unmistakable proof is necessary to set aside a tax for excessiveness in the assessment.

MUNICIPAL CORPORATIONS—TAXES—VALIDITY OF TAX—CHANGE OF BOUNDARIES. Taxes assessed upon premises to cover interest on municipal indebtedness incurred before the premises in question were included within the boundaries of the city are to that extent void.

TAXATION—FORECLOSURE—VALIDITY OF PART OF TAX. In a suit to foreclose a tax lien, where part of the taxes assessed are void, but are not so inseparably connected with the lawful tax that the latter cannot be separated, the whole tax will not be held void, but foreclosure will be granted as to the lawful tax.

Appeal from a judgment of the superior court for Pierce county, Huston, J., entered January 20, 1906, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action to foreclose a tax lien. Reversed.

*B. F. Heuston* and *T. W. Hammond,* for appellants.

*C. O. Bates,* for respondent.

HADLEY, J.—This is an action of foreclosure for delinquent taxes, brought by an individual certificate holder. The

[1]Reported in 86 Pac. 409.

action is based upon a certificate of delinquency for the taxes for the year 1897, and is also for taxes paid by the certificate holder for the prior years of 1893 to 1896, inclusive, and the subsequent years of 1898 to 1901, inclusive. The answer alleges overvaluation of the property in the assessments for the various years by reason of which it is sought to charge the property in question much in excess of its proportionate amount. It is also alleged that the taxing officers did not exercise their judgment as to the true value of the property, but that they, on the contrary, designedly followed excessive valuations of former years for the purpose of raising the debt limit of Pierce county and the city of Tacoma, in order to validate and fund certain indebtedness, which each of said municipalities had incurred, and to permit new indebtedness to be incurred with an appearance of legality. It is alleged that the taxing officers did not view the property and determine as near as practicable its true value, but that they intentionally and knowingly placed a value upon it much greater than was placed upon other like property in said city and county.

It is averred that the property in question was included within the corporate limits of the city of Tacoma prior to the time when the taxes here sought to be enforced were levied and assessed; but that, at the time the city limits were extended so as to include this property, the city was indebted approximately $1,000,000 on account of expenses incurred while said property was without the city limits; that notwithstanding such facts the taxing officers in assessing the taxes here sought to be enforced, charged against said property not only the current expense and indebtedness incurred while the property was within the city, but also charged it with indebtedness incurred prior to the extension of the city's limits, and are seeking to collect it herein. The answer is very long, but other matters alleged we believe need not be here stated. In so far as they may become material to the determination of the case, reference may be hereinafter made to them. The

trial resulted in a judgment of foreclosure, and the defendants have appealed.

It is first argued that the certificate was issued without authority, and that it is insufficient in form. Respondent insists that there was no objection to the introduction of the certificate. It is true no specific objection appears in the record; but from a stipulation as to certain facts appearing in the record immediately after the introduction of the certificate, we think it is apparent that such facts were intended as objections to the competency of the certificate. By the terms of the stipulation, it appears that the taxes upon the property for the years 1893, 1894, and 1895 were unpaid, and no certificate of delinquency having been issued to an individual, the county treasurer issued to the county a general certificate in book form as to all lands in the county on which the taxes for 1895 and prior years had not been paid. In December, 1901, this certificate book was filed with the clerk of the superior court, and the treasurer thereupon brought an action in the name of the county to foreclose the several tax liens embraced in said general certificate, including the lien upon the lots involved in this suit. The appellants here were defendants in that action, and answered therein. The said action and defense thereto were pending and undetermined at the time of the issuance of the certificate sought to be foreclosed in this suit, and the county dismissed said suit so far as it affected the property of appellants herein. The new certificate issued to respondent was for the taxes of 1897, and indorsed thereon was the following:

"Certificate of Delinquency for years 1893 to 1895 issued to Pierce County, Washington, on June 1st, 1900, for the sum of 135.05 dollars included in this certificate and redeemed thereby."

Respondent paid the amount above mentioned for the taxes of prior years. It is contended that the treasurer had no power to thus receive the former taxes and invest respondent with the lien therefor by the new certificate. There can be

no question about the treasurer's power to issue the certificate for the taxes of 1897, and by the terms of § 30, page 305, Laws 1889-90, certificates which have been issued to the county are assignable to individuals by the county treasurer on demand and payment of the full amount due thereon. In such event the assignee shall have the same rights and may proceed in the same manner as if the certificate had been originally issued to him. The certificate to the county, which originally included these lots, was in book form along with many others, and there was no separate paper concerning the lots which could be assigned by indorsement thereon and delivered. The lien could, however, be transferred, and when the money was paid by respondent, he became entitled to the lien by operation of law. When, therefore, the treasurer accepted the money from respondent, the only thing he could do was to transfer the lien to respondent, and the indorsement he made upon the certificate for taxes for 1897, while not in the words of an ordinary assignment, had the legal effect of an assignment. We think the treasurer could assign the county certificate as fully after the foreclosure suit was brought as before, and when an individual proposed to pay the county its money and accept a transfer of the lien, we think it became the treasurer's duty to make the transfer. We therefore hold that the certificate was not upon its face objectionable as to form, or as having been issued without authority.

It is next contended that the land was excessively overvalued, and that the valuation was unequal as compared with other lands. As bearing upon the matter of unequal valuation, we find the following stipulation in the statement of facts:

"It is further agreed that the several lots here involved were assessed in each of the several years mentioned upon the same basis and equally with other lots of like character in their immediate vicinity in said city."

Considering the above stipulation, we think there was not sufficient evidence to justify a finding that this property was

not valued equally with other property. On the subject of
excessive valuation it was stipulated that, if three persons
named were present they would testify to certain specified
values which were far below the assessed valuations. Such
persons were not, however, upon the witness stand for cross-
examination, so that inquiry might be made as to the basis
of their valuations and as to their method of reasoning in
arriving at the same. Under such circumstances, we think
the court would not have been justified in overturning a pub-
lic record as to values. Before such a course would have been
justified, there should have been such clear and unmistakable
proof as would have been convincing after it had been sub-
jected to the test of close and critical analysis. There was
no direct testimony as to how these particular lots were valued.
No witness who testified could say of his own knowledge that
the assessor did not actually view the property and exercise
his deliberate judgment as to values. Any testimony to the
contrary was the expression of mere opinion. The testi-
mony was mainly directed toward an effort to prove a general
system, which it was claimed had been followed by the as-
sessor's office. It was claimed that it was the custom of the
office to fix values with reference to a common center, and
without viewing the property or otherwise considering the
immediate local and intrinsic elements bearing upon the
value of particular property. This evidence was of a general
character and much of it in the nature of hearsay. No one
testified that such was the universal course, and there was no
testimony that such was the course adopted as to any par-
ticular property. We think the evidence was of such a
general and indefinite character that it did not justify the
conclusion that the property in question was not valued rea-
sonably within the law upon the subject.

It is next urged that the judgment is erroneous for the
reason that it requires the enforcement of a tax upon ap-
pellants' property for obligations incurred before this prop-
erty was included within the corporate limits of the city.

This contention presents a more serious question. It was stipulated in the statement of facts as follows:

"That during the years 1892 to 1897, inclusive, the taxes were levied without regard to the old and the new limits of the city of Tacoma and the same rate was levied upon both districts of said city."

The rates of levies which were extended over both districts for said years are set forth, and it was also testified that the taxes for said years against the property involved in this suit included interest upon the indebtedness of the city incurred before the property was included within the city limits. There is neither need of argument nor of citation of authority to show that at least that portion of the tax cannot be enforced.

Appellants cite the following authorities in support of their contention that when illegal taxes are commingled with those which are properly chargeable, the entire tax fails; Black, Tax Titles (2d ed.), § 230; *Green v. McGrew* (Ind. App.), 72 N. E. 1049; *White v. Gove,* 183 Mass. 333; 67 N. E. 359; *Kirker v. Daniels,* 73 Ark. 263, 83 S. W. 912. An examination of the above decided cases, however, shows that they relate to completed tax sales, and they hold that the inclusion of illegal taxes will invalidate the sale. In the case at bar, however, there has been no sale, and the pending case is for the purpose of affording an opportunity for judicial inquiry as to the proper amount that may be enforced against the property. If illegal taxes should be so inseparably commingled with lawful taxes that the latter could not be separated with accuracy from the former, it would probably follow that the entire tax would have to fail. It is not, however, shown that such is true in the case at bar. We apprehend the records of the city and the tax records will disclose the amount of the illegal levies. We find no evidence in the record upon that subject. It is manifest, however, that appellants' property should be charged with its share of lawful taxes, if the amount can be ascertained. The total amount of

the illegal levies for the several years, with the accrued interest thereon should be deducted and judgment rendered for the balance. The judgment is therefore reversed, and the cause remanded with instructions to the trial court to hear evidence as to the amount of the illegal tax, to ascertain what is the amount, with accrued interest, and to enter judgment in accordance with this opinion.

MOUNT, C. J., DUNBAR, CROW, FULLERTON, ROOT, and RUDKIN, JJ., concur.