# DIXON v. THOMPSON ET AL.

[No. 7,553. Filed May 28, 1912. Rehearing denied March 4, 1913.]

1. TAXATION.—*Tax Sales.—Validity.*—To convey title, a tax sale must be in accordance with the statute, and if any essential act has been omitted, or has been improperly done, the sale is ineffectual and insufficient to convey title to the purchaser. p. 563.

2. TAXATION.—*Tax Sales.—Place of Sale.—Validity.*—Under §10355 Burns 1908, Acts 1891 p. 199, §184, providing for posting copies of the delinquent list, and also notice that so much of such delinquent lands and lots as may be necessary to discharge the taxes, etc., will be sold at public auction at the courthouse door, etc., and §10380 Burns 1908, Acts 1891 p. 191, §206, providing the form of tax deed, the failure to conduct a tax sale at the courthouse door renders such sale invalid and the tax deed will not convey a good and sufficient title. p. 564.

3. TAXATION.—*Tax Sales.—Invalid Sales.—Rights of Purchaser.*—Under the provisions of §§10388, 10394 Burns 1908, Acts 1901 p. 366, §§1, 3, where a conveyance of land for taxes is invalid, the lien for taxes, which the State had prior to the sale, is transferred to the purchaser at such sale and he becomes subrogated to all of the rights of the State therein, and such right of lien remains a charge against the land until the taxes, interest and penalty, are actually repaid to him, or until such time as the lien grows into an absolute title. p. 564.

4. TAXATION.—*Tax Sales.—Invalid Sales.—Priority of Lien Over Lien for Street Improvement.—Estoppel.*—Although by §8714 Burns 1908, Acts 1905 p. 219, §109, relating to special assessments for street improvements, it is provided that liens for such special assessments shall have precedence over all liens except taxes, where a purchaser of a lot at a tax sale, holding a tax deed regular on its face, and having knowledge of irregularities in conducting the sale which rendered same invalid, remained silent after notice of the adoption of a resolution for the improvement of the street on which such lot abuts, and did not disclose that he was not the absolute owner of such lot until after the improvement was made and suit was brought to foreclose the assessment lien, he thereby waived the superiority of the lien for taxes, and is estopped from setting up the defect in his title to defeat the lien for such assessment. p. 565, 567.

5. SUBROGATION.—*Equitable Rights.*—The right of subrogation is an equitable right, and one who asserts such right must act fairly and equitably before the courts will decree in his favor. p. 566.

From Howard Circuit Court; *Lex J. Kirkpatrick*, Judge.

Action by Walter J. Dixon against George M. Thompson and another. From a judgment for defendants, the plaintiff appeals. *Reversed.*

*Harness, Moon & Voorhis*, for appellant.

*Blacklidge, Wolf & Barnes, John E. Osborn* and *Horace C. Skillman*, for appellees.

IBACH, J.—The city of Kokomo caused one of its streets to be improved by the construction of a sidewalk thereon. For a part of the cost of the improvement an assessment was spread against the lots involved in this suit, which appeared on the records in the names of appellees Thompson and Osborn. These assessments were not paid, and appellant brought suit against them to recover the amount thereof.

It appears from the record that appellees Thompson and Osborn purchased the lots at a sale for delinquent taxes, and were holding them under tax deeds at the time suit was brought by appellant. The other appellees are junior lien holders, who acquired sewer assessment liens subse-

quent to the lien obtained by appellant by construction of the sidewalk. These parties were defaulted, and their interests are not involved in this appeal. The sufficiency of the complaint was not questioned in the court below, neither is it raised here. Issues were joined by the filing of a general denial and a cross-complaint.

In their cross-complaint appellees aver a number of defects in the sale of the lots for taxes, disclaim having title to the lots under the tax deeds issued on these sales, and seek to enforce their tax liens, insisting that they could not be deprived of their statutory lien for the taxes so paid and interest, whenever it was made to appear that the conveyance to them availed nothing, for the reason that the tax sale had been improperly conducted. At the trial they introduced evidence tending to prove but one of the defects alleged, namely, that the sales to them were defective because they were not held at the courthouse door, as the law requires, but instead were held in the office of the county treasurer.

The cause was tried by the court, which found for appellees on their cross-complaint that appellant had no lien on the lots as against appellees, and that their lien was a first lien for all the money they had expended, together with 20 per cent interest. The decree provided for a sale and for distributing the funds recovered from the sale first to appellees Thompson and Osborn, and the remainder, if any, to appellant. No errors are raised and argued here except that the decision is contrary to law and is not sustained by sufficient evidence.

The first tax sale at which the two lots in question were sold to appellees was held on February 10, 1902, and the deed issued to them on February 5, 1906. Taxes for subsequent years were not paid, and they were again sold to appellees on February 8, 1904, and a second deed issued September 2, 1907. At the time of the first sale by the county treasurer the same lots were sold by the city treas-

urer to appellees for delinquent city taxes, and a deed given therefor on February 6, 1906. These deeds were all duly recorded in the recorder's office, and were regularly transferred on the transfer records in the auditor's office. So we find nothing on the face of the proceedings, nor in the recitals in the deeds, which would indicate any irregularities in any of such sales. Yet it is averred in the cross-complaint, and the evidence supports the averment, that the sales were wholly illegal and irregular, in that they were made in the county treasurer's office in the courthouse, and not at the courthouse door, as required by statute. See §§10355, 10380 Burns 1908, Acts 1891 p. 199, §§184, 206.

The manner of conducting a delinquent tax sale to

1. make the same effective to convey title must be in accordance with the statute, and each step required from the first publication notice to the delivery of the deed must be taken. If any material and essential act required to be done has been omitted, or has been improperly done, the entire sale must be held ineffectual and insufficient to convey title to the purchaser. *Gavin* v. *Shuman* (1864), 23 Ind. 32; *Mattox* v. *Stevens* (1895), 140 Ind. 282, 39 N. E. 460; *Green* v. *McGrew* (1905), 35 Ind. App. 104, 72 N. E. 1049, 73 N. E. 832, 111 Am. St. 149.

Again, it is provided by statute that "if any conveyance for taxes shall prove to be invalid and ineffectual to convey title because the description is insufficient, or for any other cause than the first two enumerated in the preceding section, the lien which the state has on such lands shall be transferred to and vested in the grantee * * * who shall be entitled to recover from the owner of such land * * * the amount of such taxes, interest and penalty legally due thereon at the time of such sale, with interest as in this act hereinafter provided, and all taxes subsequently paid and such lands shall be bound for the final payment thereof." §10388 Burns 1908, Acts 1901 p. 366. It is further provided that "if any conveyance made by the county auditor pur-

suant to a sale made for the nonpayment of taxes, under this or any former tax law, shall prove to be invalid and ineffectual to convey title for any other cause than such as are enumerated in the section immediately preceding the last section, the lien which the state had on such land for state, county, township and all lawful purposes, shall remain in full force and shall be transferred by such deed to the grantee and vested in him, * * * who shall be entitled to recover from the owner of such lands the owner of any life estate, or any other person first personally liable for the payment of such taxes, the amount of such legal taxes * * * and also the amount of all subsequent taxes paid, with like interest and such claim shall be a lien upon such lands, and the same shall be bound for the final payment thereof.'' §10394 Burns 1908, Acts 1901 p. 366.

In the consideration of a somewhat similar case, this court has announced the rule to be that where title to land does not pass by virtue of the auditor's deed, the purchaser, having acquired the lien of the State through the sale, should be granted the compensation provided by the statute for the money expended at the sale. *Green* v. *McGrew, supra.* The first question then is, Did title to the lots pass to appellees under and by virtue of these sales, or do they simply hold a lien on such lands for taxes paid? Construing the statute first mentioned strictly, as we must, we are disposed to hold that because of the failure on the part of the public officers to conduct the tax sale at the particular place provided by law, the sale was invalid, and the deed would not convey a good and sufficient title to appellees. See 37 Cyc. 1336, and cases cited under note 78. Likewise construing the remaining two sections set out above, we hold that the lien for taxes, which the State had prior to the sale, was transferred by such sale to appellees, and that they became subrogated to all the rights of the State therein. It seems that the legislature by the enactment of the section last above quoted intended to re-

move any and all doubt from the minds of all bidders at delinquent tax sales as to their right to maintain a lien at all times on the property purchased for any sums paid for taxes. They thereby made it plain that whatever lien the State had the purchaser would have, and in case title failed, the lien for the money paid was not lost. This assurance and confidence bestowed has always enabled the State to recover promptly and without delay its portion of the taxes for the support of the common government. If we were to hold otherwise, doubt and uncertainty would at once arise in such matters and the State would be seriously handicapped in the receipt of the funds justly due it. No such result could have been intended by the legislature. For the reasons given we hold the tax sales illegal, and that the purchasers did not acquire title thereby. But their rights of lien for the amount of taxes paid remained a charge against the lots until the taxes, interest and penalty were actually repaid to them as provided by law, or until such time that the lien would grow into an absolute title.

The question then remains, Is the lien of appellees paramount to that of appellant? To this we must answer affirmatively (*Ellison* v. *Branstrator* [1910], 45 Ind.

4. App. 307, 88 N. E. 963, 89 N. E. 513), unless it can be said that they are estopped from making such claim, or that by their own conduct they have waived the right to have their lien so declared.

The deeds from the auditor to appellees show *prima facie* title in them, and nothing appears from any record from the beginning of the tax sale to the recording of the several deeds to indicate that there was irregularity in such sales, or that appellees thereby acquired anything less than absolute title to the lots. It is shown by the record that on April 15, 1908, the board of public works of the city of Kokomo adopted a declaratory resolution for the construction of the sidewalk along and in front of this property. It is admitted by appellees that the averments of the com-

plaint as relating to the construction of the sidewalk are true, and this includes the admission that notice of such resolution was obtained on appellees as the owners of the real estate, to the effect that said property would be assessed to pay for the improvement. That was the time for appellees to make it known that they were not claiming title to the land, because of a defect in the sale. To this defect they were parties, as the records show they attended the sale in person and knew of the character of such sale. Yet, being fully informed of all these conditions, and being fully informed of the fact that the special improvement was to be made and the property was to be assessed for it and would be sold to make the assessment if not paid, they failed to reveal their true interest. In our judgment, the notice provided for by statute, and which they admittedly received, was such as fully to protect their interest if objection was timely made. It was their duty, before the expense of improvement had been incurred, to speak and make known their claim that the records disclosing title in them were erroneous, and that they were simply holders of a lien for taxes paid, title having failed. As they did not do this, but remained silent until the improvement was made and the value of the property enhanced thereby, and for more than a year thereafter, and did not speak until appellant brought suit to foreclose his lien, they must then be held under the facts of this particular case, as against appellant to have acquiesced in the apparent record title shown in them, and to have waived their rights to insist upon a lien superior to the claim and lien of appellant, and by their conduct to have estopped themselves from attacking his claim. The right of subrogation is recognized to be an equitable right, and the person who asserts such a right will be required to act fairly and equitably before the courts will decree in his favor. The law is not so unjust as to permit a party acting in good faith and relying on the facts disclosed by all the records of all these proceedings

as speaking the truth that appellees were the owners of the property, to be subjected to a claim for a lien asserted by them after the time when it became their duty to speak and no longer remain silent.

Appellees consented to the holding of the sale in the treasurer's office, accepted title under those circumstances, paid no attention to the fact that the city and appellant were relying on the record disclosing title in them.

Since appellant improved the lots in good faith without any notice that appellees were not the legal owners thereof, he cannot now be held to suffer, being without fault, and at the same time appellees be permitted to profit, and allow their own lack of diligence in failing to make known a latent interest to work a benefit to themselves to the injury and detriment of appellant. We therefore hold that as against appellant they cannot assert a. prior lien.

We are mindful of the provisions of the statute relating to special assessment liens, wherein it is provided that the lien of the same "shall have precedence over all liens except taxes" (§8714 Burns 1908, Acts 1905 p. 219, §109), and were it not for the conduct of appellees in this case we would hold their tax lien superior to the lien for improvement assessments, but by reason of their having by their own affirmative conduct waived this right of superiority, the sidewalk assessment became a lien on the lots in the name of Thompson and Osborn superior to their tax title to the same extent as if they had purchased them from a former owner, and had received and placed of record a warranty deed therefor.

We do not intend to hold that appellees could not assert the State's lien for taxes successfully were their title attacked for invalidity by some person other than themselves, or that they could not ordinarily, by a proper proceeding, themselves raise the question of defect of title, and have a lien declared in their favor, but what we do decide is, that, under the facts of the present case, appellees have no right

themselves to set up a defect in their title, it having been attacked by no one else, in order to defeat appellant's lien.

The judgment is reversed, with directions to the trial court to find for appellant in accordance with the prayer of his complaint.

Hottel, C. J., Lairy, Felt and Adams, JJ., concur. Myers, J., not participating.

NOTE.—Reported in 98 N. E. 738. See, also, under (1) 37 Cyc. 1468; (2) 37 Cyc. 1336; (3) 37 Cyc. 1531; (4) 37 Cyc. 1534; (5) 37 Cyc. 371. As to who may purchase and enforce a tax title, see 75 Am. St. 229.