RUDOLPH SCHIFFMANN v. CITY OF ST. PAUL and Others.[1]

December 12, 1902.

Nos. 13,167—(77).

**Lighting Contract—Injunction.**

Where the legislative body of a municipality has authority to make a contract for lighting its streets with a third party, but has not pursued the legal course provided by law in awarding the contract, the signing and delivering thereof may be enjoined at the suit of a taxpayer, who is not required to await the performance of the contract in material respects before instituting proceedings to restrain its execution.

Action in the district court for Ramsey county by plaintiff, a resident taxpayer, to restrain defendant City of St. Paul and its officers from executing a contract with defendant American Development Company for lighting the streets of defendant city during the year 1902. The case was tried before O. B. Lewis, J., who found that plaintiff was entitled to a permanent injunction as prayed. From a judgment entered pursuant to the order, defendant American Development Company appealed. Affirmed.

*Harris Richardson,* for appellant.

*J. C. Michael* and *P. J. McLaughlin,* for respondent.

LOVELY, J.

This is an equitable suit, brought by a taxpayer of St. Paul to enjoin the city, its mayor, comptroller, and clerk, from executing a contract awarded to the American Development Company for lighting its streets during the year 1902. The city, its officers, and the appellant answered. An affidavit of the city clerk was likewise filed in behalf of defendants. Upon the admissions contained in the pleadings and affidavit a permanent injunction was ordered for plaintiff, in accordance with the prayer of the complaint. Judgment was thereupon entered, from which the development company alone appeals.

The complaint and answer are quite lengthy, embracing many issues unnecessary to a determination of this appeal, since we have

[1] Reported in 92 N. W. 503.

reached the conclusion that the trial court was right in ordering the permanent injunction upon the ground that no sufficient opportunity was given persons properly interested to submit bids for the contract which had been awarded appellant to the detriment of the taxpayers of the city, of whom plaintiff was one. Properly to appreciate the relation between the city and third parties having a right to apply for contracts for services of the nature awarded to appellant, it is necessary to refer to section 1, chapter 15, of the New Home Rule Charter of St. Paul, which provides that all contracts of this character

"Shall be let to the lowest responsible bidder. * * * In such case the common council shall require a notice of not less than six days for the time and place of letting such contract by publication in the official paper of said city, which * * * shall designate the time and place when and where sealed proposals shall be received therefor; the said proposals shall be opened and considered at the first meeting thereafter of either body of the common council and upon any bid aforesaid being accepted, a contract * * * shall be executed on the part of the city by the mayor and city clerk."

On November 19, 1901, the common council of St. Paul adopted specifications for the gasoline lighting of its streets for the year 1902, and directed the city clerk to publish a notice of invitation for bids subject to same. Among these specifications was one containing the following condition:

"The bidder must place on exhibition upon some public street or place to be designated by the board of public works his proposed lamp, complete, and in service, mounted on a post, at least five days before the bids are opened, failing in which his bid will not be considered."

There were four bidders,—the appellant, the Sun Vapor Light Company, James Forrestal, and the Cleveland Vapor Light Company. The first two placed their lamps on exhibition in compliance with the specifications. The two latter did not, through their alleged ignorance of the requirement in the specification for so doing, until too late to comply with the terms thereof. The council met on December 3, 1901, and refused to open or consider the bids of Forrestal and the Cleveland Company because they had not

exhibited their lamps for five days before the bids were opened, and awarded the contract to appellant. Afterwards the common council approved a form of contract between the city and the development company for the lighting of its streets from January 1 to December 31, 1902, and authorized the mayor and clerk to execute it in proper form.

An examination of the statements and admissions in the pleadings requires us to accept the material facts above stated, and we are also forced to the conclusion that the action of the council was illegal. It cannot be seriously questioned that it was the duty of that body to adopt a practical method efficiently to secure, as far as possible, the competition provided for in the charter, and offer all persons interested an equal opportunity to bid for the contract of lighting the streets of the city. Specifications were adopted for that purpose, containing a reasonable provision for placing the lamps of competitors on exhibition to test their utility at least five days before the bids were to be opened; but the council, under the provisions of the charter, were also required to publish a notice of the time for opening the bids. The clerk, in executing these requirements, published such notice six days, only, before the date fixed for that purpose,—being six days before the first meeting of the council authorized to pass upon the same. Thus it appears that a day after the publication of the notice, or five days before the bids were to be opened, the applicant was, as a condition of obtaining the contract, compelled to have his lamps on exhibition to fulfil the specifications in that regard, and it seems very clear to us—as it did to the court below—that this condition rendered a substantial compliance with the terms of the Home Rule Charter and the specifications adopted by the council impossible, since the clerk did not give the six-days notice to all competitors; for obviously such notice must be six days before any act of the applicant would be required to get ready or avail himself of the privilege of entering upon a competitive effort to secure the contract, so that during the intermediate time there might be conveyed to the public for the benefit of the city as well as interested parties a knowledge of the purpose of the municipality to secure the letting of the same to the "lowest responsible bidder."

It is quite easy to appreciate the fact that prospective competitors, who had knowledge of the specifications at the time they were filed, might at once comply with their terms; but the notice was intended to reach all who might desire to bid, but might not have that information when the notice was published, and would be deprived of the right to bid by a shorter notice, to their own detriment, as well as the financial injury of the taxpayers of the city, for, after the second day subsequent to the notice, it would be too late to put up the lamps and make bids, since the bidder could not then comply with this essential condition in the specification. A salutary object of the plan for bidding thus adopted was to give effect to a very commendable provision in the charter to secure municipal economy. This substantial purpose was to be effectuated in good faith by the council and city officials, and the taxpayers of the city were materially interested, and had a right to complain, if any illegal course was pursued that deprived an interested contestant for the contract from entering the lists to diminish such burdens.

It is insisted by appellant that it does not appear that the contract was being actually enforced to the detriment of the plaintiff; in other words, that, if it was void, its execution was invalid, hence it could be disregarded, and a court of equity should not interfere by injunction. Clearly, it could not interfere if it was valid; hence, if appellant is right, it could not interfere at all. It does not seem necessary to spend time over this contention. It clearly appears that the officers who were restrained were not only about to execute a contract which, because of the facts stated, was valid on its face, but it is a reasonable inference that such officials would thereafter recognize its validity by all possible methods to secure its enforcement. And if there has ever been a distinction between the power of a court of equity to interfere to restrain the execution of a contract valid on its face, but illegal through extrinsic facts and the enforcement of such contract after it has been made, such distinction has not been recognized in this court, but, under views already adopted by us, it has been regarded as highly equitable and meritorious to restrain the illegal purpose to execute it at its very inception.

Where a taxpayer has no adequate remedy at law, he has a right in his own name to resort to a court of equity to restrain by injunc-tion a municipal corporation and its officers from illegally creating debts and liabilities which will increase his burdens of taxation; and this upon the theory that the damages which he will thus sustain are not in common with the damages to other taxpayers, but are special, affecting his private rights. Pomeroy, Rem. & Rem. Rights, § 142; Hodgman v. Chicago & St. P. Ry. Co., 20 Minn. 36, 41 (48); Sinclair v. Board of Co. Commrs. of Winona Co., 23 Minn. 404; Flynn v. Little Falls E. & W. Co., 74 Minn. 180, 77 N. W. 38, 78 N. W. 106; Farmer v. City of St. Paul, 65 Minn. 176, 67 N. W. 990.

But it is insisted that plaintiff, though a taxpayer, and materially affected by a contract which would require the payment of many thousands of dollars, has an adequate remedy at law,—that he might wait until the void contract was either partially or wholly fulfilled, and object to the issuance of orders in payment therefor. It seems to us that this contention answers itself, as well as the incidental claim that interference by injunction is inadequate, and therefore inequitable. It is essentially just and meritorious that a party authorized to object to the enforcement of a contract should make known his purpose to do so at the first instance that steps are taken to give it significant consequence. This course not only acquaints the officers of the municipality of its illegality, but affords protection to other taxpayers, and is but a proper treat-ment of the contractee, who may be engaged innocently in expend-ing his resources to perform an agreement that is invalid, and probably will occasion him injury thereafter.

We have not thought it necessary to consider other questions discussed by counsel, since, upon the views above expressed, we hold that the judgment must be affirmed.