## MACBETH *v.* STUNKARD ET AL.

[No. 13,226.   Filed January 23, 1929.]

*Rawley & Baumunk, M. B. Hottel* and *A. C. Miller,* for appellant.

*B. C. Craig,* for appellees.

McMAHAN, P. J.—Complaint by Edgar R. Macbeth, appellant herein, to quiet his title to what may be designated as the south fifty-three acres southwest quarter of section 19, township 13 north, range 6 west, in Clay county. Ransom H. Stunkard and twenty other defendants, all of whom are appellees herein, filed a cross-complaint alleging that they were the owners of all the coal and minerals below the surface of the land, and asked that their title thereto be quieted in them against the claim of the plaintiff. There was a finding that Ransom H. Stunkard and certain of the appellees were the owners of all minerals and coal below the surface of the west twenty acres of the fifty-three-acre tract and that appellant was the owner of the whole of the fifty-three acres, subject to the ownership of such appellees to the minerals and coal under the west twenty acres. The decree followed the finding, hence this appeal. The error assigned is the action of the court in overruling appellant's motion for a new trial, which challenges the sufficiency of the evidence to sustain the decision as to the issues presented by the complaint and also by the cross-complaint.

William P. Stunkard, through whom appellant and appellees claim title, was the owner of the land in March, 1864, when he, for a valuable consideration, by a written instrument, duly recorded, granted to Samuel Strain and D. W. Risher and their assigns, the right to enter upon the fifty-three acres described in the complaint at any time thereafter and search for coal, limestone and ore, and, when found, to remove the same from the land,

together with all the rights and privileges incident to mining and securing such coal, limestone and ore, including the right to dig, mine, explore and to occupy the land with such constructions and buildings as might be necessary and advantageous for that purpose. Stunkard was to receive fourteen cents for each ton of coal removed. It was expressly provided that all the stipulations in the instrument should be binding on the heirs, executors, administrators and assigns of the parties thereto. In September, 1870, Stunkard and wife, by warranty deed, conveyed to Benjamin F. Masten twenty acres out of the southwest corner of said section, said twenty acres being described as being seventy-one rods long, north and south, and forty-five rods wide, east and west. This deed contained the provision that, "This land is sold subject to a lease, given to Samuel Strain and W. W. Risher, reserving all the mineral coal and other minerals." In April, 1873, Stunkard and his wife executed a second warranty deed to Masten, the land therein described being the twenty acres as described in the decree of the court. Following the description of the land, this deed contained the statement that it was made for the sole and only purpose of correcting the description in the former deed. In April, 1876, the sheriff of Clay county executed a deed to "Morgan & Co. and Vinnedge Jones & Co." for the twenty acres in controversy, with other lands. This deed recites that, "Morgan & Co. and Vinnedge Jones & Co.," in 1874, recovered a judgment against "The LaFayette Iron Company, et al." for a designated sum, the issuing of execution, the sale of the twenty acres in controversy, with other lands, to "Morgan & Company and Vinnedge Jones & Company." On November 14, 1883, the auditor of Clay county executed and delivered to Agnes Donahey a tax deed for the twenty-acre tract, reciting that said tract had been duly advertised and offered for sale in accordance with

the law and failed to sell for want of bidders, that "Alfred J. Fortner and M. H. Floyd and S. Fortner" purchased said twenty-acre tract, and also a certain described four-acre tract at private sale, at the auditor's office, December 17, 1879, for $55.46 taxes returned delinquent in the name of Vinnedge Jones and Company; that the purchasers had assigned the certificate of purchase to Agnes Donahey and that there had been no redemption from such sale. This deed is regular in form, except the certificate of acknowledgment, which does not show that the deed was acknowledged before any officer authorized to take acknowledgments. On September 24, 1883, the sheriff executed a deed to Agnes Donahey for the twenty-acre tract and other land. This deed recited that a judgment had been recovered against The LaFayette Iron Company and another, with Benjamin F. Maston replevin bail, on which execution had been issued and levied on said tracts of land as the property of said Maston, that the title of Maston was sold to certain parties, who had assigned their certificate of sale to Agnes Donahey. Appellant is now the owner of all the rights in the land formerly held by Agnes Donahey and is in possession of the land described in said deeds.

On August 16, 1880, William P. Stunkard and wife executed a warranty deed to Sarah J. Redpath and Sarah J. Macbeth for the coal under the twenty-acre tract above a certain level, with the right to remove the same. There is no evidence that said grantees ever removed any coal from the land. On November 25, 1874, William P. Stunkard, by warranty deed, conveyed certain land to Charles E. Barrick and also all his right and title to all coal and minerals under the twenty-acre tract, subject to the "lease held by Strain and Risher." June 21, 1876, Charles E. Barrick and wife entered into a written agreement with Charles S. Andrews and John

G. Bryson, in which William P. Stunkard and wife joined, and which recited the execution of mineral lease to Strain and Risher; that, by divers sheriff's sales and assignments, the interest of Strain and Risher had vested in Andrews and Bryson, and the fee simple vested in Barrick and that, for a better understanding, it was agreed that the royalty mentioned in the lease from Stunkard to Strain and Risher should be reduced to eleven cents per ton for a period of three years. The agreement also recited the failure of Mrs. Stunkard to join with her husband in the said lease or in the deed to Barrick, and that she and her husband joined in this agreement, thereby ratifying and confirming said lease and the conditions of the agreement, and all the parties agreed that the lease to Strain and Risher should be in full force and effect after the expiration of the three-year period mentioned. On August 16, 1880, Barrick and wife, by warranty deed, conveyed to Nancy Stunkard, wife of William P. Stunkard, all the coal and minerals under the south half of the southwest quarter of said section 19, excepting the coal under thirty-three and one-third acres theretofore deeded to Redpath and Macbeth.

Appellant, in support of his contention that the court erred in overruling his motion for a new trial, says the undisputed evidence shows that the twenty acres in question, under the surface of which is located the coal and mineral which the court found and decreed were owned by appellees, were sold in 1879 for the nonpayment of taxes, the tax deed being issued to Agnes Donahey as heretofore stated: that Agnes Donahey also received a sheriff's deed for this same land, and that it was agreed that appellant had succeeded to, and was at the time of the trial the owner of, all the rights in the land which were formerly held by Agnes Donahey; that there is no evidence showing or tending to show the tax deed was invalid; and that, under such facts, he is not only owner

of the surface of the land, but that he is also the owner of all the coal and minerals under the surface.

The tax deed to Agnes Donahey, under which appellant claims title was issued pursuant to §6480 R. S. 1881, Acts 1881 p. 611, §211, which provides, among other things, that such conveyances "shall be executed by the county auditor, under his hand and seal, witnessed by the county treasurer, and acknowledged before the county recorder or any other officer authorized to take acknowledgments, and the same shall be recorded in the recorder's office before delivery; . . . Such deed shall be *prima facie* evidence of the regularity of the sale of the premises described in the deed, and of the regularity of all prior proceedings, and *prima facie* evidence of a good and valid title in fee-simple in the grantee of said deed," etc.

Appellee calls attention to the certificate of acknowledgment annexed to the tax deed now under consideration. This certificate recites that the deed was acknowledged by the county auditor before George E. Hubbard, who signs the certificate without in any manner indicating that he is an officer of any kind. So far as the tax deed and the certificate of acknowledgment are concerned, there is nothing to indicate that Hubbard was authorized to take the acknowledgment. The deed, not being acknowledged as required by law, was not entitled to be recorded. Not being executed as required by the statute, it was neither *prima facie* evidence of the regularity of the sale and the prior proceedings, nor was it *prima facie* evidence of a good and valid title in the grantee named in the deed. We hold the tax deed was invalid in so far as it attempted to convey any title to Agnes Donahey.

Appellant makes no claim that the sheriff's deeds to Agnes Donahey conveyed any title to her. The only

reference made by appellant to these deeds and to their effect is in support of the claim that appellant was in possession of the real estate under claim and color of title. The sheriff's deeds were properly introduced in evidence, as they constituted links in appellant's title, and constituted color of title. They were not sufficient to prove title. "To prove title by sale on execution, or order of sale, the purchaser must show a valid judgment, an execution or order of sale, and deed." *Indianapolis, etc., R. Co.* v. *Center Township* (1895), 143 Ind. 63, 69, 40 N. E. 134. There is no merit in the contention that appellant has shown title to the land in question by reason of adverse possession. The only evidence upon the subject of possession is that he was in possession of the property at the time of the trial. How long he had been in possession, or the circumstances under which he was in possession is not disclosed.

The court did not err in overruling appellant's motion for a new trial.

Judgment affirmed.