BLOOMFIELD DEMOCRAT, INCORPORATED, *v.* BOARD OF COMMISSIONERS OF GREENE COUNTY ET AL.

[No. 14,156.   Filed October 17, 1931.]

*Regester & Regester* and *Jesse F. Weisman,* for appellant.

*Will. R. Vosloh* and *Webster V. Moffett,* for appellees.

WOOD, J.—On January 25, 1930, the appellant filed its complaint in the court below, praying for injunctive relief against the defendants. The essential facts alleged were: That appellant was a corporation organized under the laws of the State of Indiana; that it was a resident taxpayer of Greene County, in said state, engaged in the publication of a Democratic newspaper, in the town of Bloomfield; that defendant Pulliam Publishing Corporation was a corporation organized and doing business in the State of Indiana, and engaged in the publication of the Linton Daily Citizen, a newspaper of nonpolitical belief and without political affiliations; that defendant George R. Hudson was auditor of said county,

and, as such officer, it was his duty to prepare and publish in two newspapers of opposite political faith in Greene County, a list of the lands returned as delinquent for taxes and for sale, for three consecutive weeks, before the sale of such lands, upon the second Monday in February, 1930; that he had caused said delinquent tax list to be published in the Bloomfield News, a Republican newspaper; that he, as such auditor, caused said delinquent tax list to be published in the Linton Daily Citizen, which is not a Democratic newspaper; that the publication of said list as aforesaid is in violation of law, and would invalidate the title to the property to be sold; that the notices thus published would not be such notice as required by law, and would be invalid, null and void; that, by reason of said facts, there could be no legal and proper sale of the lands and lots at said time and that great and irreparable injury would result to the taxpayers of the county; that defendant Henry Rollison was the treasurer of Greene County; that the Pulliam Publishing Corporation would, after the publication of such notices, file a claim for its services with the county auditor, which claim would later be allowed and ordered paid by the board of county commissioners, and would be paid out of the public funds unless said officers were restrained; that said claim would be illegal and void.

Wherefore, appellant asked for an order restraining the Pulliam Publishing Corporation from publishing said list; that the board of county commissioners be restrained from allowing any claim for such services; that the county auditor be restrained from issuing a warrant, and the county treasurer be restrained from paying same; that, upon final hearing, said order be made perpetual, and that said auditor be compelled to publish said delinquent tax list in a Democratic newspaper.

To this complaint, the defendant filed a demurrer for want of facts, assigning six separate causes: (1) That

there were not sufficient allegations that the Linton Daily Citizen was not a Democratic newspaper; (2) that the complaint showed that the list had already been published; (3) that the board of commissioners could not be restrained from allowing a claim, for the reason that the appellant had relief by appeal from such an order; (4) that the auditor and treasurer could not be restrained from drawing and paying a warrant, for the reason that there was no allegation that they would do so unless the board of commissioners so ordered; (5) that the complaint was insufficient, for the reason that, at the time it was filed, it was too late for the auditor to publish the list the number of times required by law; (6) that, at the time the suit was filed, the court could not make an order granting the relief prayed for with reference to the publishing of the tax list in a Democratic newspaper.

This demurrer was sustained, appellant refused to plead further, judgment was rendered against it, therefore, this appeal. Appellant assigns as error the sustaining of appellees' demurrer to appellant's complaint.

The county auditor is a ministerial officer, §159 Burns 1926. It follows, therefore, that he can exercise only such powers as are conferred upon him by the Constitution or statutes of the state. In the absence of any such authority, he cannot exercise any executive, legislative or judicial functions. *Chicago* v. *Seben* (1897), 165 Ill. 371, 46 N. E. 244, 56 Am. St. 245; 46 C. J. 927; 22 R. C. L. §§25, 26, pp. 391, 392.

Section 14300 Burns 1926, Acts 1919 p. 198, provides, among other things, that the county auditor "shall make out and record, in a book to be provided for that purpose, a list of lands and lots returned and remaining delinquent for taxes," etc. Section 14301 Burns 1926, Acts 1919 p. 198, provides that: "The

auditor . . . shall have such list printed in two news-
papers of opposite political parties of the county for
three consecutive weeks before such sale." Section
12080 Burns Supp. 1929, Acts 1927 p. 252, also provides
that: "In all cases where county, township, city, town
and school officials are required by law to publish no-
tices, ordinances and reports affecting county, township,
city, town and school business, respectively, such officials
are *hereby required to publish said notices, ordinances
and reports in two newspapers representing the two po-
litical parties casting the highest number of votes at the
last preceding election published in said county, town-
ship, city or town.*" (Our italics.)

In the first two sections of the statute above referred
to, the Legislature was engaged in establishing a method
to be pursued in the exercise of one of the most impor-
tant functions of government, namely, the collection of
delinquent taxes, so, in order to eliminate any uncer-
tainty on the part of the county auditor as to the method
to be pursued, the Legislature expressed itself in plain,
unequivocal language. Then, as a further manifesta-
tion of its intention, in the following year and in 1927,
it again provided in mandatory language the method of
publishing notices having to do with the public business.
In each instance, the language used is concise and ex-
plicit. That it is beyond the realm of construction or
interpretation is self evident; its meaning is plain. As
these statutes are written, the auditor has no choice in
the character of papers in which the notice of sale of
lands and lots for delinquent taxes shall be published.
If he is not sure of their political affiliation, then it is
his duty, before authorizing publication of the notice
in any newspaper, to first determine whether such news-
paper meets with the statutory requirements. It is only
after such investigation, and becoming satisfied that
there are no newspapers published in his county repre-

senting the two political parties as provided in the statute, that he is authorized or empowered to place the publication of the notice in any other newspaper.

The filing of the demurrer for the purpose of testing the sufficiency of the complaint admits the truth of all facts well pleaded. *Webster* v. *Adams* (1923), 79 Ind. App. 261, 137 N. E. 883; *Greathouse* v. *Board, etc.* (1926), 198 Ind. 95, 151 N. E. 411.

The levying, collection and expenditure of taxes is the most important function of government. It is one of the necessary powers inherent in government; without its orderly operation, the government cannot exist. It affects every taxpayer, and he has the right to insist that the officers upon whom devolves the duty of exercising this power do so in strict compliance with the law, outlining the various steps to be taken in its accomplishment.

From the allegations of the complaint, it appears that the county auditor was causing notices of the tax sale to be published in open and defiant violation of explicit statutory provisions directing the method and manner of publishing such notices, thereby injecting into the proceedings an element of uncertainty that might be far reaching and disastrous in its results. Here taxes are being collected by a sale of the taxpayers' lands; bidders are being solicited for the purpose of realizing the amount due as delinquent taxes. Unless redeemed from sale, deeds are ultimately to be executed and delivered to the respective purchasers of the different tracts of real estate. The failure to comply strictly with the statute, not only may, but is very apt to render the proceeding invalid. The taxpayers are vitally interested; they have a right to be strictly protected. "The rule is thoroughly settled in this State that the party who asserts a title through a tax sale and deed takes upon himself the burden of showing that every

step required by law to be taken, from the listing of the land for taxation to the delivery of the deed, has been regularly taken." *Mattox* v. *Stevens* (1895), 140 Ind. 282, 39 N. E. 460; *Millikan* v. *Patterson* (1883), 91 Ind. 515; *Green* v. *McGrew* (1905), 35 Ind. App. 104, 72 N. E. 1049, 73 N. E. 832, 111 Am. St. 149; *Richcreek* v. *Russell* (1904), 34 Ind. App. 217, 72 N. E. 617; *Dixon* v. *Thompson* (1912), 52 Ind. App. 560, 98 N. E. 738; *Knotts* v. *Tuxbury* (1917), 69 Ind. App. 248, 117 N. E. 282; *Dastin* v. *Myers* (1924), 82 Ind. App. 325, 144 N. E. 425. But §14327 Burns 1926, Acts 1919 p. 198, §284, providing for the form of tax deed to be executed by the county auditor, provides that, "such deed shall be prima facie evidence of the regularity of the sale of the premises described in the deed, and of the regularity of all prior proceedings, and prima facie evidence of a good and valid title in fee simple in the grantee in said deed," thus changing the burden as announced in the rule above quoted, but it does not in any manner relax the necessity of complying with the various steps to be taken in the levying and collection of taxes. *Knotts* v. *Tuxbury, supra; Macbeth* v. *Stunkard* (1929), 88 Ind. App. 487, 164 N. E. 711.

When public officials are violating positive mandates of the statute or attempting to perform or carry out some act for which there is no authority of law, and where there is no discretionary power vested, and which may result in injury to the taxpayer, he is not compelled to sit helplessly by and see his rights thus jeopardized, but he has a remedy by injunction. Such has long been the established law of this state. *State, ex rel.,* v. *Custer* (1858), 11 Ind. 210; *Board, etc.,* v. *Templeton* (1875), 51 Ind. 266; *Board, etc.,* v. *McClintock, Aud.* (1875), 51 Ind. 325; *Alexander* v. *Johnson* (1895), 144 Ind. 82, 41 N. E. 811; *Deweese* v. *Hutton* (1896), 144 Ind. 114, 43 N. E. 13; *Harney* v. *Indianapolis, etc., R.*

*Co.* (1869), 32 Ind. 244; *Middleton* v. *Greeson, Trustee* (1886), 106 Ind. 18, 5 N. E. 755; *Miller* v. *Bowers* (1902), 30 Ind. App. 116, 65 N. E. 559; *Board, etc.,* v. *Pashong* (1908), 41 Ind. App. 69, 83 N. E. 383.

But it is urged by appellees that the appellant should not prevail, because of laches in bringing its action. With this contention we cannot agree. The record shows that the complaint was filed on January 25, 1930, which would be on Saturday of the third week previous to the second Monday of February, 1930, the day upon which under the law the sale was to be held. The appellant had the right to assume that the appellees would do their duty as the law prescribed, and commenced its action just as soon as it was ascertained that they proposed to disregard the law. In other words, if this contention was to prevail, appellees could by their conduct completely disarm a taxpayer and thus defeat the very purpose and intent of the law, thereby taking advantage of their delinquencies. It would seem as though appellant acted at the first opportunity.

It is further urged by appellees that appellants have an adequate remedy at law, in that, as a taxpayer, it can appeal from the order of the board of commissioners allowing the claim of the appellee Pulliam Publishing Corporation compensating it for the publication of said list. But this right of appeal could not in any way correct the wrong that would be inflicted upon the taxpayers because of the failure to obey the mandatory provisions of the law relating to the publication of the notice. In the case of *Schiffmann* v. *City of St. Paul* (1902), 88 Minn. 43, 92 N. W. 503, where similar reasoning was resorted to, the Supreme Court of that state answered it in this language: "But it is insisted that plaintiff, though a taxpayer, and materially affected by a contract which would require the

payment of many thousands of dollars, has an adequate remedy at law,—that he might wait until the void contract was either partially or wholly fulfilled, and object to the issuance of orders in payment therefor. It seems to us that this contention answers itself, as well as the incidental claim that interference by injunction is inadequate, and therefore inequitable. It is essentially just and meritorious that a party authorized to object to the enforcement of a contract should make known his purpose to do so at the first instance that steps are taken to give it any significant consequence. This course not only acquaints the officers of the municipality of its illegality, but affords protection to other taxpayers, and is but a proper treatment of the contractee, who may be engaged innocently in expending his resources to perform an agreement that is invalid, and probably will occasion him injury thereafter."

The case of *Sinclair* v. *Com'rs of Winona Co.* (1877), 23 Minn. 404, 23 Am. Rep. 694, was quite similar to the instant case. There, it was alleged that the auditor of Winona County had prepared a list of lands delinquent for taxes; that the defendant board of county commissioners, professing to act under the statutes of the state, had designated the "Novelty Press," which they styled a newspaper, in which the auditor should publish such delinquent tax list; that it was the intention of the commissioners and auditor to publish the notice in said "Novelty Press," and to pay for such publication out of the public funds. It is there alleged that said "Novelty Press" is not a newspaper within the meaning of the statutes, and, therefore, not such as the county commissioners had any authority to designate for such purpose or cause the publication to be made in. As relief, the plaintiff asked that the auditor be enjoined from publishing such list in the "Novelty Press," and that the board of county commissioners be enjoined from

paying for the publication for or on behalf of the county. Two questions were submitted to the court: First, was injunction the proper remedy? and, second, was a taxpayer a proper party to bring the action? Both of these were answered in the affirmative. It was claimed that, as the collection of delinquent taxes depends upon the legality and regularity of the proceeding for the collection, it would be imperiled if the publication was made in the unauthorized manner proposed, and that to pay for an unauthorized publication out of county funds would be a misapplication thereof. In discussing these propositions, the court said: "Upon the allegations of the complaint these claims would appear to be well founded. That there is some remedy in a case of this kind is not questioned. Is there an adequate remedy at law? The defendants contend there is, by *certiorari;* but, as respects the designation of the *Novelty Press* by the commissioners, a *certiorari* would bring up only the record of the proceedings by the board of county commissioners. (Citing authority.) It is not to be presumed that such record would show anything whatever as to the question whether the *Novelty Press* was or was not a newspaper, within the meaning of the statutes; and upon the answer to this question would depend the authority to pay for the publication out of county funds. In addition, it is to be observed that the action of the board in designating a newspaper, as well as in doing the other things objected to, is ministerial— not judicial. This is so, because the duty of the board in the premises is clearly defined by statute, and they exercise no general discretion in performing it. (Citing authorities.) *Certiorari* does not lie to review ministerial proceedings. (Citing authorities.) There is, then, no remedy by *certiorari* in this case. No other suggestion of a remedy at law is made which requires particular consideration, and we can conceive of no rem-

edy which is completely adequate to the exigencies of the case, save the injunction of a court of equity."

It follows, therefore, that the trial court erred in sustaining appellees' demurrer to appellant's complaint.

Judgment reversed.