STATE OF MINNESOTA *ex rel.* Robert P. Lewis and others *vs.* DISTRICT COURT OF RAMSEY COUNTY.

February 5, 1885.

City of St. Paul—Local Improvements—Authority for Assessment.—
Under the provisions of the charter of the city of St. Paul regulating proceedings for improving streets, after the matter of a proposed improvement has been referred by the council to the board of public works, and the board have reported, recommending the improvement, sending with their report a plan or profile of the work to be done, the report, plan, or profile, and the order of the council to the board to do the work, must ordinarily be construed together, to determine whether the work done is authorized by the order.

Same—"Macadamizing."—Rule applied where the order was to "grade," and the work done was macadamizing.

Same—Final Approval—Departure from First Order.—But where the authority of the council to order the work does not depend on an application of property owners, the final authority of the board to have the work done is derived from the approval by the council of the award by the board of the contract to do the work, so that a previous departure by the board from the order to do the work is immaterial.

Same—Assessments—Record.—That the assessment was entered on loose sheets of paper attached together in a roll, with a proper caption, and kept in the office of the board, and not recorded in a book till the assessment was confirmed, does not affect the validity of the assessment.

Same—Property Benefited—Determination of Board of Public Works.
In case of such improvement the determination of the board of public works as to what property is benefited, and the extent of the benefits, is conclusive, except in case of fraud or demonstrable mistake of fact

*Certiorari.* The city of St. Paul, having through its council and board of public works made an assessment to pay for grading Rice

street, applied to the district court for Ramsey county, upon due notice, for judgment against certain property which had been assessed and on which the assessments were not paid.   Upon the application before *Brill,* J., the relators, owners of certain of the assessed property, appeared and objected to judgment for the reasons stated in the opinion.   Evidence was introduced in support of the objections, and judgment was ordered against the property.   The relators then sued out this writ.

*James B. Beals* and *W. K. Gaston,* for relators.

An order to "grade" does not authorize macadamizing any more than it would paving or planking.   They are all separate improvements.   (Sp. Laws 1874, *c.* 1, subc. 7, title 1, § 2.)   Such an improvement requires the action of both the council and the board.   *Althen* v. *Kelly,* 32 Minn. 280.

*W. P. Murray,* for respondent.

GILFILLAN, C. J.   *Certiorari* to review the judgment and proceedings of the district court upon an application by the city of St. Paul, under its charter, for judgment upon an assessment for grading Rice street.   On the trial below the city introduced the assessment warrant and rested.   That made a *prima facie* case under section 54, chapter 7, of the charter of the city, (Sp. Laws 1874, *c.* 1, as amended by Sp. Laws 1875, *c.* 1, § 15.)

The relator makes here, as we understand him, substantially these objections to the assessments, all of which were made in the court below : *First.* The order of the common council to the board of public works was merely to "*grade*" the street, whereas the board caused stone gutters and curbing to be put down and the street to be macadamized,—much more expensive work than mere grading,—and the board had no authority to do the work for which the assessment was made.   *Second.* The assessment was not recorded as required by section 21, chapter 7, of the charter, but was upon a mere fugitive or loose piece of paper, not signed, certified, or identified.   *Third.* The assessment was not confined to property fronting on Rice street, but took in all property within a quarter of a mile on each side of Rice street north of Sycamore street to the city limits, making upon that property a merely front-foot assessment, regardless of any fact except

that it lay within a quarter of a mile of Rice street, and leaving un-assessed property equally benefited with that assessed, and bearing the same relation to the improvement.

After the city rested its case, the relator, to establish the objections made by him, introduced—*First.* An order of the common council referring the matter of *grading* Rice street between designated points to the board of public works, to examine and report. *Second.* The report of the board to the council, stating that they considered the said improvement necessary and proper; that they estimated the expense at $52,000; that in their opinion real estate to be assessed for the improvement could be found benefited to the extent of damages, cost, and expenses necessary to be incurred thereby; that the improvement was not asked for by a majority of the owners of property so to be assessed; and that they transmitted with the report a plan or profile of the work to be done, and of an order directing the work. The plan or profile was not introduced. *Third.* An order of the council directing the board to *grade* the street between the points designated. *Fourth.* A notice of a meeting of the board for December 31, 1883, to make assessments for *grading* the street between the points designated, specifying the property to be assessed as that fronting on the street between those points, and stating the aggregate amount to be assessed as $48,311.35. *Fifth.* A resolution of the board on March 17, 1884, annulling the previous notice, and directing a new notice. *Sixth.* A notice pursuant to the terms of said resolution, for a meeting of the board on March 31st, to make assessment for *grading* the street between the points designated, specifying the property to be assessed as that fronting on Rice street, from College avenue to the north city limits, and all within a quarter of a mile on either side of Rice street north of Sycamore street, and such property in Green's addition, Jilson's subdivision, Guerin's outlots, and Flynn's subdivision as fronts on Sycamore street; and such other property as might be deemed benefited thereby; and stating the aggregate amount to be assessed as $48,463. *Seventh.* The entry in the records of the board, declaring the assessment completed, and directing the clerk to give notice of the meeting for confirming the report. Relator admitted that proper notice of the meeting to confirm was given,

but the notice was not introduced. *Eighth.* The map of the city, so far as related to the property assessed, and one block on each side. *Ninth.* The record of the confirmation and of the assessment, as entered in the record book of confirmations. *Tenth.* Evidence as to the character of the work done, and also tending to show that on the streets where lots on one side were assessed, but not lots on the other, the benefits to the lots not assessed were as great as to those assessed.

The question is, did the evidence so introduced establish the objections raised, so that the court below ought to have rendered judgment against the city? This must be determined upon the provisions of the city charter regulating such assessments. Controlling general rules to be applied upon the trial of any contest on an assessment are found in section 39, chapter 7, (as amended by Sp. Laws 1875, c. 1, § 12,) and section 54, (as amended by Sp. Laws 1875, c. 1, § 15.)

Sec. 39. * * * "No objection shall be interposed or sustained in relation to any of the proceedings prior to the confirmation of the assessment, except that the common council had no authority to order the said improvement, or that the board of public works had no authority to have said work performed, and no objections as to any other of the proceedings shall be sustained on any mere formal irregularity or defect." (Mun. Code, St. Paul, p. 91.)

Sec. 54. "No error or omission which may have heretofore been or may hereafter be made in the order or in the proceedings of the common council or board of public works, or of any of the officers of said city, in referring, reporting upon, ordering, or otherwise acting concerning any local improvement provided for in this chapter, or in making any assessment therefor, or in levying and collecting such assessment, not affecting the substantial justice of the assessment itself, shall vitiate or in any way affect such assessment. The reports of the city treasurer and assessment warrants held by him, referred to in section thirty-six of this chapter, shall be *prima facie* evidence that the proceedings up to the date of such warrants were valid and regular. * * *" (Mun. Code, St. Paul, p. 98.)

When, in this case, the city had introduced the assessment warrant, it had proved, *prima facie*, that everything essential to the va-

lidity of the assessment had been done. The *onus* was then on any one claiming that anything on which the validity of the assessment depended had been done amiss or omitted, or that any state of things required to such validity did not exist, to establish it by proof.

The provision making non-essential errors or omissions not affecting the substantial justice of the assessment, disposes of the relator's second objection above set forth. The assessment seems to have been at first entered on sheets of paper, attached together in a roll, with a proper caption, and kept in the office of the board; and, upon being confirmed, to have been recorded in a book. We do not see that it is necessary to record in a book, or sign or certify the assessment, before it was confirmed, and while it was incomplete, in the nature of a proposed assessment, which might or might not become final. Even if it ought to have been done, the omission to do it did not affect the substantial justice of the assessment, and consequently cannot vitiate it.

The relator's third objection above stated is not established by the evidence. The matter of determining what property is specially benefited by a local improvement, and the extent of the benefit, belongs, under the charter of St. Paul, to the board of public works, and their decision is conclusive except in case of fraud or demonstrable mistake of facts. *Rogers* v. *City of St. Paul,* 22 Minn. 494; *Carpenter* v. *City of St. Paul,* 23 Minn. 232; *State* v. *Board of Public Works,* 27 Minn. 442; *State* v. *District Court,* 29 Minn. 62. The evidence of the relator discloses only a difference in opinion between him and the board of public works as to what property was to be benefited, and the extent of the benefits; but does not show that the board acted upon an illegal principle of assessment, or that they were under any mistake of fact, or that they did not to the best of their ability exercise their judgment in the matter.

His first objection presents more difficulty. Not by reason of the stone gutters and curbing; for, as was held in *State* v. *District Court,* 29 Minn. 62, if such work be a necessary or proper part of the general work of grading, it may be done in proceedings for grading the street; and the evidence on the point shows the gutter and curbing to have been a necessary part of the general work of grading. But the

order of the council directs the board to *grade* the street, and the evidence shows that the work done would probably be generally called macadamizing.    Whether the evidence shows a departure by the board from the order of the council, and, if so, whether that would affect the substantial justice of the assessment within the meaning of section 54, are the questions to be decided.    To this end it is necessary to refer generally to the provisions of the charter regulating the course of proceedings down to the confirmation of the assessment.

By section 5, chapter 7, of the charter, (Mun. Code, St. Paul, p. 69,) any proposition for a local improvement must be referred by the council to the board; and if the latter determine the improvement to be necessary and proper, they shall report the same to the council, with an estimate of the expense thereof, and a proper ordinance or order for doing the work; and by section 6, where the improvement relates to opening, straightening, widening, contracting, altering, extending, or grading any street, etc., they shall furnish the council, as a part of their report, with a plan or profile of the contemplated improvement; and, by section 5, the council may make such modification of the proposed plan as may be petitioned for by any of the owners of the property to be assessed, or as the council may think proper, not materially changing the character and object of the improvement as reported by the board, or materially increasing the expense thereof.

By an amendment of section 6, (Sp. Laws 1875, *c.* 1, § 7,) the report of the board is to be construed as advisory to the council, and not essential to its authority to order any local improvement.    By section 23, if the council pass the order for doing the work, the city clerk is to transmit a copy to the board, who then let the work.    By section 27, proposals for doing the work are to be advertised by the board; a plan or profile of the work to be done and specifications for doing it being deposited with the clerk of the board for public inspection.    By section 28, (as amended by Sp. Laws 1875, *c.* 1, § 9,) the contract for doing the work is to be awarded to the lowest reliable and responsible bidder; but no contract shall be awarded except by a vote of at least two-thirds of the members of the board in favor thereof, nor except with the approval by the council by a two-third vote of the members thereof elect.    Upon being so awarded and approved, the

contract is executed, and a copy filed in the office of the city comp-- troller.   By section 23, after the whole work is under contract, the board proceed to make the assessment.   By section 25, notice of the time and place of meeting to make the assessment is to be given, specifying what such assessment is to be for, and the amount to be assessed; all persons interested having the right to appear and be heard.   By section 26, when the assessment is complete, notice of the time and place of meeting to hear objections, and for confirmation of the assessment, is to be given, at which all persons interested have the right to appear and be heard.   When confirmed, the assessment is final and conclusive.

The provisions of sections 5 and 6 show what the council has be-- fore it, and what it considers and passes upon when it makes the order for the board to do the work.   It considers and passes on, not solely the report, but also the plan or profile for the work sent with the report.   The plan or profile may, and probably in most cases. does, show more clearly and definitely than the report the character of the improvement recommended by the board.   Thus, in a case like this, the report might designate the work as grading, while the plan or profile might be such that the work should properly be designated as macadamizing; and in passing on the matter the council would be passing on a proposition to macadamize, though in the report it. was called grading.   It would be merely a case of misnomer; and if the council in such case made no modification in the plan, but ap-- peared to approve it by an order to do the work, designating it by the term grading, the work to be done might be that appearing by the plan.   That is, to determine what the order authorized the board to do, the report and plan and order should be construed together.. From the failure to introduce the plan, it is impossible for the court to say precisely what the board was to do, or that they departed from the authority given them.   The presumption raised by the introduc- tion of the warrant is that they did not; that all their subsequent acts were valid.

But the relator makes a mistake in assuming that the authority of the board to have the work performed must rest on, or is derived ex- clusively from, the order.   All that the board can do, upon the order-

being made, and before the matter must come before the council again for its action, is to have specifications for the work prepared, to advertise for and receive bids, and award the contract. The matter must then be referred to the council for its approval or rejection of the award. If the council do not approve the award, the board cannot have any work performed; if it do approve the award by the vote prescribed, then, and not before, it becomes the duty of the board, and it has the authority, to cause a contract for the performance of the work to be executed with the person to whom it is awarded; and when the contract is executed, the amount required to be assessed being then definitely ascertained, it proceeds to make the assessment, and to have the work done pursuant to the contract.

The final authority of the board to have the work performed, is, in effect, derived from the council's approval of the award of the contract to perform it. The previous order, however worded, gives authority only to take the preliminary or preparatory steps necessary for the final action of the council. Any departure from the order in those preliminary steps, as to the character of the proposed improvement, could not affect the authority given by the approval of the award, as the council, being assumed to have the award before it, with full knowledge of the extent and character of work awarded, must be held by the approval to ratify such departure. We are speaking of cases where, as in this case, the authority of the council to undertake the improvement does not depend on an application of property owners. We do not decide what effect such a departure might have in a case where the authority of the council depends on such an application.

Judgment affirmed.

BERRY, J. I concur in the final result of the majority opinion, but upon the ground taken by the city attorney, viz., that what is spoken of in this particular case as "macadamizing" is not macadamizing proper, but merely a mode of surfacing, and therefore properly enough designated as grading. As to the "plan or profile," I agree to what is said below by my brother Mitchell. As to the "award" of the board of public works, it was, as the record expressly shows, an award for "grading" only, and therefore I do not perceive how *its* approval by

the council could be an approval of the macadamizing in question, unless *such* macadamizing (so called) is included in the term grading. I further think that the *"order"* to *grade*, and not the approval of the award, is that which gives the *authority* to the board of public works spoken of in section 39, cited by the chief-justice.

MITCHELL, J. I concur in the result, but do not assent to the first ground upon which it is held that the first objection to the assessment was not established by the evidence. The order of the council referred to the board of public works merely the matter of *"grading"* Rice street. The report of the board to the council, as appears on its face, relates solely to the matter of "grading." I do not think there is any presumption that the plan or profile of the work transmitted by the board to the council, and accompanying their report, included anything more than the matter referred to them, and to which their report refers, to wit, the "grading;" and in my judgment "grading" does not include "macadamizing." I would, therefore, place the decision of this point exclusively upon the second ground, viz., that the approval of the award by the council gave the board authority to do the work.