JOHN DIAMOND v. CITY OF MANKATO and Others.[1]

February 27, 1903.

Nos. 13,206—(220).

### Street Paving—Petition—Award of Contract.

The charter of the city of Mankato provides that the paving of its streets at the cost of lots benefited thereby may be initiated on the petition of a majority of the lot owners, but the city council may, in cases where in its judgment public necessity requires it, make the improvement without any petition. The work, however, must be awarded to the lowest reliable bidder, after advertising for bids for the work on the basis of the plans and specifications therefor. *Held*:

### Public Necessity—Discretion of Council.

1. The power to determine the question whether public necessity requires the making of such improvement without a petition therefor is committed to the discretion of the council, and its decision in the premises is final, unless it is made' to appear that its action is arbitrary or fraudulent.

### Evidence.

2. It does not appear from the evidence that the council acted either arbitrarily or fraudulently in ordering the work here in question.

### Bids for Work—Specifications.

3. Where, as in this case, municipal authorities can only let a contract for public work to the lowest bidder after advertising for bids, the specifications must be so framed as to secure fair competition upon equal terms to all bidders. And any contract entered into with the best bidder, containing substantial provisions beneficial to him which were not included in the specifications, is void, for it is not the contract offered to the lowest bidder by the advertisement.

### Decision Sustained.

4. The finding and conclusion of the trial court to the effect that this rule was violated in awarding the contract in this case are sustained by the evidence.

Appeal by defendants from an order of the district court for Blue Earth county, Lorin Cray, J., denying a motion 'for a new trial. Affirmed.

[1] Reported in 93 N. W. 911.

*C. O. Dailey* and *Wm. N. Plymat,* for appellants.

*M. J. Severance, Jean A. Flittie,* and *H. L. & J. W. Schmitt,* for respondent.

START, C. J.

The plaintiff is a taxpayer of the city of Mankato, and the owner of land fronting on that portion of Broad street lying between Lincoln and Vine streets, in the city, which the proper municipal officers determined to pave with asphalt. He brought this action to restrain such officials from entering into any contract on behalf of the city for the making of such improvement. On April 18, 1902, a temporary injunction was issued in the action restraining such officials from entering into any contract for the proposed work whereby any liability on the part of the city would be incurred therefor, which would necessitate payment during the fiscal year of 1902, or any following fiscal year whatever, from the current funds of the city, except such as could be lawfully raised by special assessments upon property benefited by the improvement other than property belonging to the city. After the injunction was served, and on April 23, 1902, such officials entered into a contract for the work with the Barber Asphalt Paving Company, hereafter designated as the "contractor," which contained this provision:

"Said payments to be made after the completion of the said work, and acceptance by the board of public works out of money lawfully raised by special assessment upon real estate and property benefited by said improvements other than real estate and property belonging to said city of Mankato."

On May 17, 1902, the plaintiff made and served a supplemental complaint, alleging the making of the contract and other facts which it is claimed rendered the contract void, and praying that, in addition to the relief asked for in the original complaint, the contract be adjudged null and void. The cause was tried by the court without a jury, and findings of fact and conclusions of law were made to the effect that the plaintiff was entitled to the relief demanded. The defendants appealed from an order denying their motion for a new trial.

89 M.—4

1. The trial court, after finding certain evidentiary facts, made this further finding:

"That because of the matters and things herein found it was not necessary, proper or advisable that said improvement be ordered or contracted for, all of which at all times * * * [was] well known to the defendant officers of said city. That the defendants * * * did not in good faith consider that it was necessary, proper, or advisable that said improvement be made * * * or that the public interests would be best subserved thereby."

It is the contention of the defendants that this finding of the ultimate facts as to the necessity for ordering the improvement made is not justified by the evidence.

The charter of the city provides that the paving of any of its streets at the charge of the land to be benefited by the improvement may be initiated upon a petition signed by a majority of the property owners who would probably be assessed for the expenses thereof, and that the council shall not be required to proceed with the work unless such a petition is presented to it.

"Provided that the common council, by a two-thirds vote of its members, may in cases where in the judgment of said council, the public necessity requires it, order the matter of any contemplation [sic] improvement and the advisability of doing the same to the board of public works for their consideration, without petition." Sp. Laws 1891, page 418 (c. 47, subc. 6, tit. 2, § 5).

The plaintiff claims that the proviso only authorizes the council to initiate the improvement on its own motion when some emergency arises "where, on account of the danger to public safety, there is no time or opportunity to wait for a petition to be filed and acted upon under the general provisions of the charter." Clearly this is not a correct construction of the proviso. The paving of a street is not an emergency remedy for the repair of a dangerous public way, but a permanent improvement thereof. The meaning of the charter provisions in question is quite obvious. They provide in effect that the council is not bound to take any steps to secure the making of the proposed improvement, unless the petition therefor is signed by a majority of the property owners to be affected thereby, but if in the exercise of its fair and deliberate judgment, evidenced by a two-thirds vote of its mem-

bers, it concludes that the public necessity requires any particular authorized improvement to be made, the council may initiate and carry on the work without any petition therefor. The power to determine the question whether public necessity requires a particular improvement to be made without any petition therefor is committed by the charter, not to the courts, but to the sound discretion of the city council. And its decision in the premises is final, unless it is made to appear that its action is arbitrary or the result of fraud or of demonstrable mistake of fact. Rogers v. City of St. Paul, 22 Minn. 494; State v. District Court of Ramsey Co., 29 Minn. 62, 11 N. W. 133; State v. District Court of Ramsey Co., 33 Minn. 164, 22 N. W. 295; Janeway v. City of Duluth, 65 Minn. 292, 68 N. W. 24.

Hence the question is not whether there was evidence fairly tending to support the finding that public necessity did not require the paving of the street in question, or whether the finding complained of is manifestly against the weight of the evidence. The question is, does the evidence clearly establish the fact that the city authorities, in ordering the improvement, acted arbitrarily or fraudulently, or under a demonstrable mistake of fact? There was no petition for the paving of the street in this case, and the work was ordered by the requisite vote of the council, against the protest of a large majority of the property owners whose land would be assessed for the expenses thereof. The question whether the finding of fact now under consideration is sustained by the evidence must be tested by the rule we have stated, and not by the ordinary rule applicable to findings of fact by judge or jury. We have examined the evidence relevant to the question, and find that it is not sufficient to establish the fact that the decision of the council as to the necessity for the proposed improvement was arbitrary, or the result of fraud or a demonstrable mistake of fact. The evidence tends to show that there was no pressing necessity for the improvement, and that in view of such fact, and the financial condition of the city, it was unwise to force it upon the protesting property owners whose real estate was to be charged with the expenses thereof. But this is not sufficient to warrant the conclusion that the city council acted arbitrarily or

fraudulently in ordering the work to be done. We accordingly hold that the finding is not sustained by the evidence within the rule.

2. The trial court further found, in effect, that the city owned land which had a frontage of two hundred eighty-two feet on the line of the proposed improvement, which would be benefited thereby proportionately with all other property fronting thereon, and that pursuant to the terms of the contract it was the purpose of the city council to assess the entire cost of the improvement upon the private property fronting on the part of the street to be paved, and as a conclusion that such an assessment would be unjust and illegal. This finding and conclusion are assigned as error by the defendants.

The validity of such an assessment has been fully discussed in briefs of counsel, but the discussion is premature. If a special assessment is ever levied against the plaintiff's land for the paving in question, and it is made for no more than his fair proportionate share of the cost of the improvement, he will have no cause for complaint. But if it prove otherwise he has, by virtue of the charter provisions, an ample remedy for the wrong, and cannot resort to a court of equity in an independent action to enjoin the making of the proposed assessment. Sp. Laws 1891, c. 47, subc. 6; Fajder v. Village of Aitkin, 87 Minn. 445, 92 N. W. 332. In view of this conclusion, we neither discuss nor decide the question of the validity of the proposed special assessment.

3. The trial court also found:

"That there is asphaltum other than Pitch Lake and Bermudez asphaltum as available, and equally as good for paving purposes, as Pitch Lake and Bermudez asphaltum, and that there are persons, firms, or corporations seeking contracts for paving streets in Minnesota and elsewhere who use in such work asphaltum other than Pitch Lake or Bermudez asphaltum, and who cannot procure Pitch Lake or Bermudez asphaltum. That by limiting the asphaltum to be used in said improvement to Pitch Lake and Bermudez asphaltum, and by other restrictions and provisions in the specifications therefor, and by the changes and alterations made in said specifications by the officers of defendant city, as herein found, fair competition in bidding upon the contract for said improvement was prevented and excluded, and firms who wished to.

and would, have filed bids therefor, were prohibited from so doing." And, further, that the contract was null and void as against the city.

If this finding and conclusion are supported by the evidence, it necessarily leads to an affirmance, notwithstanding the trial court's finding on the question of the necessity for initiating the improvement is not justified by the evidence. The question is, then, whether the finding of the facts upon which the conclusion is based is manifestly and palpably against the weight of the evidence. The law is well settled that where, as in this case, municipal authorities can only let a contract for public work to the lowest responsible bidder, the proposals and specifications therefor must be so framed as to permit free and full competition. Nor can they enter into a contract with the best bidder containing substantial provisions beneficial to him, not included in or contemplated in the terms and specifications upon which bids were invited. The contract must be the contract offered to the lowest responsible bidder by advertisement. Nash v. City of St. Paul, 11 Minn. 110 (174); Schiffman v. City of St. Paul, 88 Minn. 43, 92 N. W. 503; Wickwire v. City, 144 Ind. 305, 43 N. E. 216; Dickinson v. Poughkeepsie, 75 N. Y. 65; 20 Am. & Eng. Enc. (2d Ed.) 1165-1169.

This rule should be strictly enforced by the courts, for if the lowest bidder may by an arrangement with the municipal authorities have incorporated into his formal contract new provisions beneficial to him, or have onerous ones excluded therefrom which were in the specifications upon which bids were invited, it would emasculate the whole system of competitive bidding. It would also lead to abuses by opening wide the door of opportunity to award the contract to a favorite or generous contractor—generous at the cost of the taxpayer. To secure such a result it would only be necessary to make the terms and specifications upon which bids were invited burdensome for bidders, and for the favored one to make his bid upon the secret understanding that such terms would be modified in making the formal contract. In this case the evidence does not justify the conclusion that there was any such secret understanding, or that the municipal authorities acted corruptly in the premises. If, however, the forbidden act

was in fact done, the contract is void without reference to the intent with which it was done, for the purpose of the rule is to secure fair competition upon equal terms to all bidders, and to remove all temptation for collusion, and opportunity for gain at the expense of the property owners by the municipal authorities.

We come now to the consideration of the evidence in the light of this rule. The street was to be paved with asphalt. The city charter required that the municipal authorities should advertise for bids for the doing of the work on the basis of the plans and specifications, and award the contract to the lowest reliable bidder. This action was commenced March 31, 1902. A temporary injunction to restrain the municipal authorities from entering into the contract for the paving of the street was prayed for in the complaint. The municipal authorities, on March 17, 1902, invited by a proper advertisement sealed bids for doing the work, upon the basis of the specification, to be filed on or before April 2. On April 18 the temporary injunction was issued and served, and on April 23 the formal contract was entered into. The specifications for the improvement limit the kind of asphalt to be used to Trinidad "Pitch Lake" asphaltum obtained from the "Pitch Lake" in the Island of Trinidad, or Bermudez asphaltum. The evidence does not justify the conclusion that there was a monopoly of either Pitch Lake or Bermudez asphaltum. But the evidence, although conflicting, tends to show that there was other Trinidad asphaltum just as good, and that the formula prescribed in the specifications for the making of the pavement was applicable only to Trinidad Pitch Lake asphaltum, and that for this reason contractors were deterred from bidding on the work. The specifications contained a provision to the effect that the city should not be liable for any delay or stoppage of the work by reason of any injunction or legal proceedings whatever, and a further one to the effect that a penalty of $20 per day would be exacted for every day's delay in finishing the work after August 1, 1902. The contract was changed by adding the words, "provided such failure or delay is not through unavoidable causes."

The evidence tends to show that at least one party was deterred from bidding on the work by reason of these provisions in the

specifications. In view of the pendency of the action and the opposition of the property owners to the improvement, they were well calculated to deter bidders, unless they added a substantial sum to the amount they would have otherwise named in their bids for the loss they might incur by reason of these provisions of the specifications. Again, the evidence shows that by the specifications payments for the work should not be made earlier than one hundred twenty days after the completion and acceptance of the work, out of money received from assessments duly made on account of the improvement; and that the time of payment was changed in the contract, so that payment of the work should be made, after the completion and acceptance thereof, out of assessments therefor on property benefited thereby other than that owned by the city. This difference in the time—some four months —for the payment of the contract price was substantial, and was manifestly for the benefit of the contractor, as the evidence shows that the estimated cost of the work was over $50,000. But this advantage was not offered to other bidders by the invitation to bid on the basis of the specifications. The evidence tends to show that in other material respects the specifications were not followed in the contract, and that the changes were beneficial to the contractor. Upon the whole evidence, we are of the opinion that the finding in question is fairly sustained by the evidence, and we accordingly hold that the contract was void.

There are several assignments of error as to the finding and conclusion of the trial court with reference to the paving of the intersections of the street. We do not consider them, for the reason that they are immaterial in view of the ground upon which we sustain the conclusion of the trial court that the contract is void.

Order affirmed.

BROWN, J., (dissenting.)

If the court is to be understood as holding that public authorities engaged in a lawful public improvement may not, as to such details as are here involved, in the exercise of a sound judgment, in good faith and without fraud or collusion, change and modify the terms and provisions of the contract under which the work is

to be performed from the specifications and conditions made part of the proposal and invitations to bidders, I dissent. That whatever changes and modifications were made in the terms of the contract here under consideration were not the result of fraud or collusion the court expressly states, yet holds that the authorities had no power to make them. This strips the officers of all discretion in such matters, is too strict an application of legal principles, and wholly unnecessary for the protection of the public. Of course an agreement between the authorities and the successful bidder before the bid is presented, to the effect that particular changes will be subsequently made, would prevent fair competition and amount to a fraud which would vitiate the contract, but there was no such agreement in this case.