140 So. 394

**FRASCH v. CITY OF PRICHARD et al.**

1´Div. 688.

Supreme Court of Alabama.

Jan. 21, 1932.

Rehearing Denied March 31, 1932.

Armbrecht, Hand & Twitty, of Mobile, for appellant.

Joseph G. Bowen, of Mobile, and Leon G. Brooks, of Brewton, for appellees.

BROWN, J.

This is a bill by a resident citizen and taxpayer seeking to enjoin the performance of a contract entered into by the respondents, the city of Prichard, a municipal corporation having less than 6,000 inhabitants, and the J. B. McCrary Engineering Corporation, for the construction of certain paving, storm and sanitary sewers, sidewalks, curbs, gutters, etc., in pursuance of local improvement ordinances, adopted by the mayor and city council, providing for the improvement of certain streets.

Demurrers filed by the defendants to the bill were sustained, and from that decree the complainant prosecutes this appeal.

After the adoption of said ordinances, notice was given by publication as required by section 2182 of the Code as amended by the Municipal Public Improvement Act, approved September 10, 1927, Acts 1927, p. 760, § 11, inviting competitive bids for the work. The published notice, after stating that sealed bids would be received on a specified date, describing in a general way, the character and approximate quantity of such work, and, as to some of the work, the type of material to be used, further stated: "Plans and specifications are on file in the office of the City Clerk at Prichard, and in the office of the Consulting Engineers, Birmingham, Alabama. Specifications and proposal blanks can be secured, on deposit of $5.00, from the undersigned or from the Consulting Engineers. Copy of the plans will be mailed by the Consulting Engineers on receipt of payment (not deposit) of $5.00. *The bidder shall agree to accept special assessment bonds at par and accrued interest in payment for said work.* The right to reject any or all bids is reserved," etc.

The only bid submitted was the bid of the respondent McCrary Engineering Corporation, which was accompanied by the following proposal:

"Our bid of even date covering the construction or proposed Municipal Improvements under Ordinances Nos. 105, 106 and 107 is conditioned upon our being awarded all of the work for which bids were advertised.

"Further that bi-monthly estimates of materials furnished and work done be made and the City promptly to issue us notes authorized under section 2223 of the Code of Alabama to cover the full amount of said estimates. Said notes to bear 8% interest from date, to be payable on or before one year from date, for the payment of which the City will pledge the proceeds of assessments to be made against the property benefited by the improvements and also the full faith and credit of the City to the extent of its Constitutional debt limit at the time of issuing said notes. Such notes may be paid by the delivery to the holder thereof of special assessment bonds of the City issued under the Code of Alabama, the same to be a lien or charge against the property improved and against the funds collected from assessments levied against the property improved, in which bonds the City shall also pledge its full faith and credit in the sum of $10,000.00 to pay any deficiency, not exceeding that amount, that may result in the failure of the City to collect said assessments and/or pay said bonds at maturity. Said assessment bonds shall bear interest at 6% per annum, payable semiannually, both principal and interest, payable at a New York Bank. The deferred installments of assessments against the property improved shall bear interest at 8% per annum.

"The notes and bonds to be issued and the proceedings relating thereto and to the improvements covered by said ordinances to be approved, as to legality by Leon G. Brooks, Attorney.

"We are bidding with the understanding that we be allowed a period, not exceeding sixty days from the date hereof, before beginning actual construction operations *and that a formal contract embodying the foregoing is to be prepared and executed by the City and ourselves before the construction contract or this proposal shall be binding on either of us.*" (Italics supplied.)

The contract referred to in the proposal, the execution of which was made a prerequisite of the validity of the proposal and the contract for the work, stipulates, inter alia: "That in consideration of the premises the company agrees that it will, during the progress of the construction of said improvements, lend to the City such funds as may be required from time to time to pay the cost of construction, not to exceed the total cost thereof as shown by the estimates adopted by the council, said loans to be made on bimonthly estimates by the City Engineer of materials furnished and work done. The City will execute and deliver to the company to evidence said loans its promissory notes as authorized by section 2223 of the Code of Alabama, said notes to bear interest at the rate of eight per cent (8%) per annum from date, to be payable on or before one year from date at the Citizens and Southern National Bank, Atlanta, Georgia, or at some other bank approved by the Company; and that for the payment of said notes the City will pledge the proceeds of assessments to be made against the property benefited by the improvements to be constructed under said contract, and shall also pledge the full faith and credit of the City to the extent of its constitutional debt limit at the time of issuing said notes. A discount of ten percent on said notes will be allowed as to all payments thereon received from the property owners who pay in full

in cash within the period allowed by law the amount of assessments against their property for said improvements; which discount shall be allowed by the company or against which it will protect the City in the event the company shall not be the holder of said notes at the time of payment. Said notes may be paid at or before maturity by delivery to the holder thereof of special assessment bonds of the City issued under the Code of Alabama, the same to be a lien or charge against the property improved and against the funds collected from assessments levied against the property improved, *in which bonds the City shall also pledge its full faith and credit in the sum of Ten Thousand Dollars ($10,000) to pay any deficiency, not exceeding that amount, that may result in the failure of the City to collect said* assessments and/or pay said bonds at maturity. Said assessment bonds shall bear interest at the rate of six percent (6%) per annum, payable semi-annually, both principal and interest to be payable at a New York Bank. The deferred installments of assessments against the property improved shall bear interest at the rate of eight per cent (8%) per annum, which the City, through its council, does hereby agree to fix as the interest rate of said deferred installments by proper action at the time said assessments are made final." (Italics supplied.)

The stipulations in the contract for the work, material to the questions presented, are:

"1.—The Contractor promises and agrees to furnish and deliver all the material and to do and perform all the work and labor required to be furnished and delivered, done and performed in and about the construction of improvements known as Project Number 1222–A as follows: Street Improvements under Improvement Ordinances 105 and 106 Sanitary Sewers under Improvement Ordinance No. 107, in strict and entire conformity with the provisions of the contract, and the notice to contractors and proposal, and the plans and specifications prepared by the Consulting Engineers, the originals of which are on file in the office of the Consulting Engineers, copies of which are hereto attached, and which said plans and specifications and the notice to contractors and the proposals are hereby made a part of this agreement as fully and to the same effect as if the same had been set forth at length in the body of this agreement.

"2.—The Municipality agrees and promises to pay to the Contractor for said work, when completed in accordance with the provisions of this contract at the unit prices as set forth in the said proposal, a total sum amounting approximately to One Hundred Six Thousand, One Dollar and Fifty cents ($106,001.50), payments to be made as provided in said specifications upon presentation of the proper certificates of the Consulting Engineers or their representative and upon the terms set forth in the said specifications and pursuant to the terms of this contract."

The allegation of the bill, in short, is that these several writings in respect to the same subject-matter and between the same parties, evidence the contract between them, and that said contract is such a radical departure from the published notice inviting bids that it was unauthorized and should be declared void.

The contention of the defendants, on the other hand, is that "there was no material departure from the advertisement calling for bids through the execution of the construction and financing contracts," and the bill is without equity.

Another contention of the appellees is that the statute does not require the notice calling for bids to state the method of payment, and notwithstanding the notice states that "the bidder shall agree to accept special assessment bonds at par and accrued interest in payment for said work," it also states that "specifications and proposal blanks can be secured" from the clerk or consulting engineer, and these would have disclosed the character of the bonds which the city proposed to issue and deliver.

Where two or more writings are executed by the same parties at the same time, in respect to the same subject-matter, intended to evidence the intention and obligations of the parties, they will be construed together as one instrument. Drennen v. Satterfield, 119 Ala. 84, 24 So. 723; Berry v. Nall & Duxberry, 54 Ala. 446; Weeden v. Asbury 223 Ala. 687, 138 So. 267; 2 Mayf. Dig. 754, § 61.

Construing the writings attached as exhibits to the bill—the proposal of McCrary Engineering Corporation, the financing contract, and the contract for the work—it is clear that a statement of the provisions providing for payment is a radical departure from the published notice inviting bids, in so far as the method of payment for the work is concerned.

"Special Assessment Bonds," as related to cities of the class of Prichard, have, since the adoption of the Code of 1907, and prior thereto, had a well-understood statutory meaning and effect as bonds which constitute a lien or charge only against the property improved, and against the funds collected from the assessment levied against the property improved, and are not a general obligation of the city or town, nor shall such city or town be in any way liable to the holder of such bond in case of failure to collect the same, the indebtedness secured thereby payable in deferred installments. This statutory

definition and legal effect of such obligation has persisted through the Municipal Codes from the adoption of the Code of 1907 to the present time, and besides has been so interpreted in the decisions of this court. Code of 1907, § 1411; Code 1923, § 2227; Acts 1927, p. 544; Town of Capitol Heights v. Steiner, 211 Ala. 640, 101 So. 451, 38 A. L. R. 1264.

The contract entered into clearly contemplates that payments by the city will be made in cash on bimonthly estimates, with money borrowed from the contractor, and for which it agrees to give its promissory notes bearing 8 per cent. interest, pledging the proceeds of the assessments to be made, and the full faith and credit of the municipality to the payment of the notes; such notes to be paid to the holders thereof, by the delivery of special assessment bonds of the city issued under the Code of Alabama, the same to be a lien or charge against the property improved and against the funds collected from the assessments levied against the property improved in which bonds the city shall also pledge its full faith and credit in the sum of $10,000, to pay any deficiency, not exceeding that amount, that may result in the failure of the city to collect said assessments, *and to pay said bonds at maturity.*

No doubt, if the published notice had carried the information that the municipality would make a contract such as it did make, it would have received bids from other contractors. The method of payment in the matter of such public contract is not only material, but a matter of vital importance to prospective bidders.

The question next to be considered is, Did this drastic departure from the published invitation to bidders render the contract void as being without the scope of the governing board of the municipality?

The statute provides: "If the council shall finally order the making of the proposed improvement, or improvements, notice shall be given asking for bids for such work, which notice shall describe in a general way the character and approximate quantities of such work and the types of materials, including alternates, if any, to be employed, and shall be published once a week for two consecutive weeks in a newspaper published in said city or town, or, if there be no newspaper published in said city or town, in a newspaper of general circulation therein; the date for receiving bids as set out in said notice shall be not earlier than two weeks after the date of first publication of said notice. The said municipal authorities must let the contract to the lowest responsible bidder; provided that if the lowest responsible bidder has not bid a satisfactory price, the council or other governing body may reject all bids and re-advertise for bids in the same manner as hereinabove provided," etc. Section 2182, Code 1928.

■■ This statute is mandatory, and its object, where the municipality does not undertake the work itself, is to compel the letting of contracts for performance of such work at competitive bidding, and to secure the performance of the work at the minimum cost to the taxpayers whose property is charged with its payment, and "the municipal authorities cannot enter into a contract with the lowest bidder containing substantial provisions beneficial to him, not included in or contemplated in the terms and specifications upon which bids were invited. The contract must be the contract offered to the lowest responsible bidder by advertisement." 19 R. C. L. 1071, § 357.

The above quotation from Ruling Case Law is founded on Inge v. Board of Public Works, 135 Ala. 187, 33 So. 678, 93 Am. St. Rep. 20, and is supported by the following authorities: 44 C. J. 347, § 2523; City Council of Montgomery et al. v. Barnett et al., 149 Ala. 119, 43 So. 92; Reams v. Cooley, 171 Cal. 150, 152 P. 293, Ann. Cas. 1917A, 1260; Diamond v. Mankato, 89 Minn. 48, 93 N. W. 911, 61 L. R. A. 448; Chippewa Bridge Co. v. Durand, 122 Wis. 85, 99 N. W. 603, 106 Am. St. Rep. 931.

The statute is a limitation on the power of the governing board to contract, and it is elementary law that, where such public board oversteps its power, its acts are void. City Council of Montgomery et al. v. Barnett et al., supra.

■ The fact that the statute does not require the matter stated to be stated, if it is germane and material to the contract proposed to be let, does not relieve the situation.

The statute authorizing the notice authorized the municipal authorities to "impose further conditions upon bidders with regard to bonds and surety for the faithful completion of such work, according to contract, *or for any other purposes mentioned in the specifications.*" (Italics supplied.) Section 2182, Code.

Nor is it aided by the fact that a proposed bidder could have resorted to an examination of the plans and specifications on file and the forms of proposals. Non constat, a contractor who did not care to accept special improvement bonds, payable in installments running through a period of ten years, may have deemed it unnecessary to examine the plans and specifications or the ordinances of the city. City Council of Montgomery et al. v. Barnett et al., supra. And in this case he would have found nothing to show that the city proposed to pay cash by securing a loan and giving its notes therefor for the payment of which the city proposed to pledge its full faith and credit.

414

■ The decree sustained the demurrer to the bill as originally filed, and to the bill as amended. There was no ruling on the special demurrers to the different sections of the bill, and the assignments of error predicated thereon will not be treated. Sandlin' et al. v. Anders et al., 210 Ala. 396, 98 So. 299; Pollak v. Stouts Mountain Coal & Coke Co., 184 Ala. 331, 63 So. 531.

The court erred in sustaining the demurrers to the bill, and to the bill as amended, and for these errors the decree is reversed.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and BOULDIN, JJ., concur.