[Cite as *Cocca Dev. v. Mahoning Cty. Bd. of Commrs.*, 2010-Ohio-3166.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| COCCA DEVELOPMENT, LTD. | ) | CASE NO. 08 MA 163 |
| | ) | |
| PLAINTIFF-APPELLANT | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| MAHONING COUNTY BOARD OF | ) | |
| COMMISSIONERS | ) | |
| | ) | |
| DEFENDANT-APPELLEE | ) | |

CHARACTER OF PROCEEDINGS:      Civil Appeal from the Court of Common Pleas of Mahoning County, Ohio Case No. 07 CV 3005

JUDGMENT:      Reversed and Remanded.

APPEARANCES:

For Plaintiff-Appellant:      Atty. Mark A. Hutson
Atty. William A. Myers
100 DeBartolo Place, Suite 400
Boardman, Ohio 44512

For Defendant-Appellee:      Atty. Paul J. Gains
Mahoning County Prosecutor
Atty. Linette M. Stratford
Atty. Gina DeGenova Bricker
Assistant Prosecuting Attorneys
21 West Boardman Street, 6th Floor
Youngstown, Ohio 44503

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Mary DeGenaro
Dated: June 25, 2010

WAITE, J.

{¶1} Appellant Cocca Development, Ltd., appeals the entry of summary judgment by the Mahoning County Court of Common Pleas against it and in favor of Appellee, Mahoning County Board of Commissioners in this breach of contract action.

{¶2} Appellant is the successor in interest to 7655, LLC ("7655"), which, in 2001, was the owner of the Southwoods Executive Center ("Southwoods") in Boardman, Ohio. In 2001, Appellee leased space at Southwoods for the Mahoning County Educational Service Center ("MCESC"). At that time, the county was required to provide equipment and office space to the MCESC pursuant to R.C. 3319.19.

{¶3} The county began accepting proposals from prospective lessors of office space for MCESC on November 1, 2000. Throughout the document, the packet uses language associated with a traditional RFP and also language associated with a traditional bid document. The proposal packet, specifically captioned "Request for Proposals," ("RFP"), included specifications for the office space, blank affidavits, and instructions to bidders. The instructions to bidders explicitly stated that proposals must be submitted on the prescribed form provided with the materials, and should not be detached from "the remainder of the contract documents." (Instructions to Bidders, ¶1.1.) Section 1.1 further instructed interested persons to furnish a summary of the proposal, which could be provided on separate

paper, "but should be attached to the contract document package." (Instructions to Bidders, ¶1.1.)

{¶4} The instructions also included the following provision:

{¶5} "16.1 The county may terminate this agreement at any time, in whole or in part due to non-appropriation of funds by providing sixty (60) days written notice to the vendor. The county shall pay all reasonable costs incurred by the vendor up to the date of termination. The vendor will not be reimbursed for any anticipated profits which have not been earned to the date of termination [the termination provision]."

{¶6} The specifications in the RFP read, in pertinent part: "To determine the award of the contract, the County will negotiate using criteria factors including but not limited to, ability to meet aforementioned requirements, date of availability for occupancy, quality of the proposed facility, interior and exterior aesthetics, and cost of the lease." (Bid Specifications, p. 7.) According to the affidavit of Lynn Davenport, 7655's Executive Vice President and Treasurer, the county and 7655 engaged in negotiations between the opening of proposals on November 1, 2000, until the execution of the lease on February 2, 2001 concerning the layout of space, the work to be performed by 7655, use of the building's auditorium, and a right to relocate MCESC to nearby office space. (Davenport Aff., ¶4.)

{¶7} The parties executed a ten year lease, with two five year renewal terms, on February 15, 2001. The signature page of the lease indicates that it was approved as to form on February 7, 2001 by an assistant prosecutor with the Mahoning County Prosecutor's Office.

{¶8} On January 1, 2007, R.C. 3319.19 was amended and the county's obligation to provide funding for the MCESC was eliminated. After determining that MCESC would not assume the rental obligations under the lease, Appellee elected to terminate the lease for non-appropriation of funds. However, the lease itself did not contain a provision that authorized Appellee to terminate for that reason.

{¶9} Appellant, as successor in interest to 7655, filed a complaint for declaratory relief, breach of contract, and equitable and promissory estoppel, as well as a motion for a temporary restraining order, asserting that Appellee's termination of the lease constituted a breach of the terms of the lease. Appellee argued in its answer that the lease was void because its terms violated Ohio competitive bidding laws, and that estoppel cannot be asserted against a government agency.

{¶10} More specifically, Appellee argued that the lease was the product of the competitive bidding process, and, therefore, the lease was void because it did not contain all of the material elements contained in the original bid. In this argument, Appellee relied on the termination provision in the instructions to bidders. Appellee claimed that the absence of a similar provision in the actual lease invalidated the lease according to Ohio competitive bidding law.

{¶11} The trial court agreed, holding that the omission of the termination provision in the lease "added an additional provision beneficial to [Appellee]," and, as a consequence, the lease was void. (8/6/08 J.E., p. 3.) The trial court's judgment entry presupposed without analysis that the "agreement" referred to in the termination

provision is the lease, and appears to presuppose that the process used to obtain the lease was a competitive bid process, not the RFP process.

{¶12} Although the trial court did not cite any case law in its decision, the decision appears to be predicated on the rule of law announced in *Checie v. Cleveland* (November 20, 1939), 8th Dist. No. 17429. According to the Eighth District Court of Appeals in *Checie*, " '[a]ny contract entered into with the best bidder containing substantial provisions beneficial to him which were not included in the specifications is void for it is not the contract offered to the lowest bidder by the advertisement.' " Id. at *14, quoting *Desmond [sic] v. City of Mankato* (1903), 89 Minn. 48, 93 N.W. 911, syllabus at paragraph 3.

{¶13} The *Checie* Court decided, " '[t]his rule should be strictly enforced by the courts, for if the lowest bidder may, by an arrangement with the municipal authorities, have incorporated into his form of contract new provisions beneficial to him or have onerous ones excluded therefrom which were in the specifications upon which the bids were invited, it would emasculate the whole system of competitive bidding.' " Id., quoting *Desmond [sic]* at 53.

{¶14} In the matter sub judice, Appellant argues that the "agreement" referred to in the termination provision is not the lease, but, rather, the agreement that existed pursuant to an RFP between the county and 7655 after 7655's proposal was submitted and prior to the execution of the lease. As earlier discussed, Appellee contends that the "agreement" referred to in the termination provision is the lease, itself.

{¶15} Appellant further argues that, even if the "agreement" referred to in the termination provision is the lease, the lease at issue in this case is not subject to Ohio competitive bidding law pursuant to R.C. 307.86(I), which specifically exempts leases for office space from conformance with R.C. 307.86. Subsection (I) exempts leases for office space where:

{¶16} "(a) The contracting authority is authorized by the Revised Code to lease the property.

{¶17} "(b) The contracting authority develops requests for proposals for leasing the property, specifying the criteria that will be considered prior to leasing the property, including the desired size and geographic location of the property.

{¶18} "(c) The contracting authority receives responses from prospective lessors with property meeting the criteria specified in the requests for proposals by giving notice in a manner substantially similar to the procedures established for giving notice under section 307.87 of the Revised Code.

{¶19} "(d) The contracting authority negotiates with the prospective lessors to obtain a lease at the best and lowest price reasonably possible considering the fair market value of the property and any relocation and operational costs that may be incurred during the period the lease is in effect."

{¶20} For its argument, Appellant relies on the title of the document issued by the county, that is, the "Request for Proposals," the discretionary language in the bid specifications, and the negotiations following the selection of 7655's proposal to argue that the RFP at issue is not governed by Ohio competitive bidding law. In

other words, even if the "agreement" in the termination provision referred to the lease, and the termination provision was a material provision in the RFP, the county had the discretion to negotiate the termination provision out of the lease and exercised that discretion.

**{¶21}** Appellee does not argue that the RFP in this case does not fall within the ambit of subsection (I), but, instead, that the county elected to competitively bid the lease rather than issue a request for proposals pursuant to subsection (I) of the statute. Appellee's purchasing director, James Fortunato, claimed that the county used a competitive bidding process in procuring office space of MCESC. (Fortunato Aff., ¶4.)

**{¶22}** Based on the record before us, we find that the "agreement" referred to in the termination provision was the agreement that existed between the parties after the submission of 7655's proposal but before the execution of the lease. The document at issue was clearly the product of an RFP and not of the traditional bid process. Although the language in the RFP appears ambiguous, extrinsic evidence supports the conclusion that Appellant's interpretation of the termination provision is reasonable, because Appellee did not object to the omission of the termination provision from the lease. Furthermore, any ambiguity should be resolved in favor of Appellant because Appellant is the non-drafting party.

<u>ASSIGNMENT OF ERROR NO. 1</u>

**{¶23}** "The trial court erred by concluding that the Request for Proposals required the Lease to provide that the tenant may terminate the Lease at any time on sixty day's notice."

**{¶24}** Before the trial court were the affidavit and deposition of James Fortunato, the affidavits of Lynn Davenport, James Tablack, and Anthony Cocca, the blank RFP form, the completed RFP form submitted by 7765, the lease, excerpts from the Mahoning County Purchasing Policies & Procedures Manual, and the subordination agreement.

**{¶25}** The construction of the terms of a contract is a question of law to be decided by the courts, and is also reviewed de novo on appeal. *Lovewell v. Physicians Ins. Co. of Ohio* (1997), 79 Ohio St.3d 143, 144, 679 N.E.2d 1119. In construing the terms of a written contract, the court must give effect to the intent of the parties; the intent is presumed to rest in the language that the parties have chosen to employ. *Saunders v. Mortensen*, 101 Ohio St.3d 86, 2004-Ohio-24, 801 N.E.2d 452, at ¶9, citing *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 509 N.E.2d 411, paragraph one of the syllabus. "Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 374 N.E.2d 146, paragraph two of the syllabus.

**{¶26}** Where the terms of a contract are clear and unambiguous, a court need not look beyond the plain language of the agreement to determine the rights and

obligations of the parties. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 53, 544 N.E.2d 920. If a contract is reasonably susceptible to more than one meaning, then it is ambiguous and extrinsic evidence of reasonableness or intent can be employed. *City of Steubenville v. Jefferson Cty.,* 7th Dist. No. 07 JE 51, 2008-Ohio-5053, ¶22.

**{¶27}** Ambiguous contracts are construed against the drafter. *Handel's Ent., Inc. v. Wood*, 7th Dist. Nos. 04MA238, 05MA70, 2005-Ohio-6922, ¶104, citing *Graham v. Drydock Coal Co.* (1996), 76 Ohio St.3d 311, 314, 667 N.E.2d 949. However, "this rule of construction is merely a guiding principle the court uses in determining the parties' intent after viewing the extrinsic evidence presented by the parties." *Beverly v. Parilla*, 165 Ohio App.3d 802, 2006-Ohio1286, 848 N.E.2d 881, ¶30.

**{¶28}** Because the termination provision is in the instructions to "bidders" portion of the document rather than the "bid specification" section of the packet, and the lease is referred to throughout the instructions as either "the contract" or "the Contract," Appellant argues that the "agreement" referred to in the termination provision is the agreement between the parties to enter into the lease. In other words, the termination provision was intended to govern the relationship between the county and 7655 during the time between the submission of 7655's proposal and the execution of the lease.

**{¶29}** Appellee contends that the "agreement" referred to in the termination provision actually refers to the lease. Appellee states, "because no agreement

existed between the parties until *after* the contract was awarded, one can only conclude that this provision applied to the Lease Agreement and not to the bid packet itself. And simply because Cocca may have elected to include this provision elsewhere in the bid packet does not somehow eliminate the purpose of this language." (Emphasis in original.) (Appellee Brf., p. 6.) Moreover, Appellee relies on the fact that the instructions to "bidders" and the specifications were identified as a single document, and prospective proposals would not be accepted if the instructions were separated from the specification documents.

{¶30} We find that the "agreement" referred to in the termination provision refers to the agreement that existed between the county and 7655 following the submission of 7655's proposal and prior to the execution of the lease. Although the termination provision is ambiguous, several other provisions in the instructions clearly address this specific time frame. For instance, Section 9.0, captioned: "FAILURE TO DELIVER ON TIME," reads, "[f]or each calendar day that lapses after the prescribed time given in the proposal for delivery on performance, the sum of one-hundred dollars $100.00 per day shall be deducted from any money due the contractor, not as a penalty but as liquidated damages." Section 5.8, captioned: "Failure to enter into contract upon award," reads, "[i]n the event that the bidder fails to enter the contract upon award, the certified check or bond will be forfeited to Mahoning County as liquidated damages for the delay and expense caused by the bidder's default." Likewise, the placement of the provision in the instructions, rather than the specifications, also supports the conclusion that the termination provision

was intended to govern the relationship of the parties prior to the execution of the lease.

**{¶31}** Additionally, the extrinsic evidence in this case, the fact that Appellee did not object to the omission of the termination provision from the lease, supports the conclusion that Appellant's interpretation of the phrase "this agreement" is reasonable. The lease document was approved by an agent of Appellee. Moreover, Appellee drafted the RFP, and, as a consequence, any ambiguities should be resolved in favor of Appellant. In other words, to the extent that the documents attached to the RFP are referred to in the instructions as "the contract documents," this ambiguity should be resolved in favor of the non-drafting party. *Handel's*, supra.

**{¶32}** Because the trial court could not have concluded that the termination provision was a material term of 7655's proposal without first concluding that the "agreement" in the termination provision referred to the lease, we find that the trial court erred as a matter of law, and reverse the judgment of the trial court. Appellant's first assignment of error is sustained.

**{¶33}** Since we have sustained Appellant's first assignment of error, the second assignment of error would ordinarily be moot, especially since Appellant has argued these assignments in the alternative. However, since the issue in the second assignment is actually crucial to explain the determination of the first assignment, it must be addressed.

<u>ASSIGNMENT OF ERROR NO. 2</u>

**{¶34}** "The trial court erred by failing to conclude that the Lease was the valid product of negotiations pursuant to the office-lease request-for-proposals exception to the competitive bidding statutes."

**{¶35}** Appellee claims that, "after being awarded the bid, 7655, LLC presented Mahoning County with a lease agreement that not only omitted the termination provision originally contained in its proposal but added a substantial provision wholly beneficial to it." (Appellee's Brf., p. 10.)

**{¶36}** Article 4.1 of the lease reads, in pertinent part:

**{¶37}** "Tenant represents that a current appropriation is available for the Minimum Rent and additional rent during the Initial Term. Concurrently with the execution and delivery of this Lease, and as a condition to the effectiveness thereof, Tenant shall deliver to Landlord written evidence that there is a balance, not already obligated to pay existing obligations, in the appropriation available to pay the Minimum Rent during the Initial Term."

**{¶38}** Appellee argues that Article 4.1 of the lease is a "substantial provision wholly beneficial to [Appellant]." (Appellee's Brf., p. 10.) Appellee further argues that Article 4.1 is a "legal nullity" because R.C. 5705.41(D) "provides that a county may only appropriate funds necessary to fulfill the obligations due in a single calendar year." (Appellee's Brf., pp. 10-11, fn. 2.)

**{¶39}** In fact, R.C. 5705.41 reads, in pertinent part:

**{¶40}** "No subdivision or taxing unit shall:

**{¶41}** "* * *

{¶42} "(D)(1) Except as otherwise provided in division (D)(2) of this section and section 5705.44 of the Revised Code, make any contract or give any order involving the expenditure of money unless there is attached thereto a certificate of the fiscal officer of the subdivision that the amount required to meet the obligation or, in the case of a continuing contract to be performed in whole or in part in an ensuing fiscal year, the amount required to meet the obligation in the fiscal year in which the contract is made, has been lawfully appropriated for such purpose and is in the treasury or in process of collection to the credit of an appropriate fund free from any previous encumbrances. This certificate need be signed only by the subdivision's fiscal officer. Every such contract made without such a certificate shall be void, and no warrant shall be issued in payment of any amount due thereon. * * *"

{¶43} R.C. 5705.44 limits a county's authority to appropriate funds beyond a fiscal year. R.C. 5705.44, captioned: "Contracts running beyond fiscal year; contracts payable from utility earnings," reads, in pertinent part, "[t]he amount of the obligation under such contract or lease remaining unfulfilled at the end of the fiscal year, and which will become payable during the next fiscal year, shall be included in the annual appropriations measure for the next year as a fixed charge."

{¶44} Appellee relies on the premise that the RFP was actually a request for competitive bids in order to argue that the inclusion of Article 4.1 into the lease voids the contract. Appellee claims that the rule in *Checie* prevents Appellant from including any provision favorable to Appellant in the lease that was not included in the bid specifications.

**{¶45}** Under Ohio's competitive bidding statute, public agencies are required to award a public contract to the "lowest and best" bidder. R.C. 307.86. The intent of competitive bidding is, " 'to provide for open and honest competition in bidding for public contracts and to save the public harmless, as well as bidders themselves, from any kind of favoritism or fraud in its varied forms.' " *Cedar Bay Constr., Inc. v. Fremont* (1990), 50 Ohio St.3d 19, 21, 552 N.E.2d 202, 204, quoting *Chillicothe Bd. of Edn. v. Sever-Williams Co.* (1970), 22 Ohio St.2d 107, 115, 51 O.O.2d 173, 177-178, 258 N.E.2d 605, 610. See, also, *Hardrives Paving & Constr., Inc. v. Niles* (1994), 99 Ohio App.3d 243, 247, 650 N.E.2d 482, 484-485. However, the general assembly exempted certain contracts from the competitive bidding statute, including leases for office space, which may be entered into through a request for proposal process.

**{¶46}** In *Danis Clarkco Landfill Co. v. Clark Cty. Solid Waste Mgt. Dist.* (1995), 73 Ohio St.3d 590, 653 N.E.2d 646, the Ohio Supreme Court explained the distinction between procurement through requests for proposals and competitive bidding. In that case, the district issued a request for proposals in order to contract with a provider of waste disposal services for the county. Following the selection of the proposal submitted by Ogden Martin Systems, Inc. ("OM"), the district engaged in negotiations with OM in an effort to enter into a contract with OM for waste disposal services.

**{¶47}** A landfill operator whose proposal was rejected by the district filed a declaratory judgment action seeking to prevent the district from accepting OM's

proposal. The landfill operator argued that OM's request for proposals, which included several components of competitive bidding, was, as a result of the inclusion of those components, subject to the competitive bidding statute. The Ohio Supreme Court held:

**{¶48}** "The court of appeals in this case recognized that '[n]egotiating material aspects of contracts after the bid opening is violative of the sanctity and integrity of competitive bidding.' Review of the District's RFP makes it clear that the District chose a process which can only in the most general sense be deemed to be 'competitive bidding.' See *Yellow Cab of Cleveland, Inc. v. Greater Cleveland Regional Transit Auth.* (1991), 72 Ohio App.3d 558, 561, 595 N.E.2d 508, 509 (' "[T]he RFP method of procurement is not competitive bidding." ') Certainly, the RFP process did not contemplate the execution of a contract based upon a simple acceptance by the District of the successful bidder's original proposal. Rather, the RFP contemplated an award solely of the opportunity to *further* negotiate to reach a possible contract with the District." (Emphasis in original.) Id. at 600.

**{¶49}** The Ohio Supreme Court further held that the district's decision to incorporate components of competitive bidding into the request for proposals process did not convert this process into competitive bidding. Although the district was required to comply with any competitive bidding provisions that were incorporated into the request for proposals, the *Danis* Court concluded that the district was not "bound to the full panoply of statutory bid requirements set forth in R.C. Chapter 307." Id. at 603.

**{¶50}** The Tenth District Court of Appeals in *Wheeling Corp. v. Columbus & Ohio River Railroad Co.* (2001), 147 Ohio App.3d 460, 771 N.E.2d 263, observed that the district in *Danis*, "sufficiently defined the RFP process as subject to eventual negotiation of a final agreement which might vary substantially from the original terms of the RFP," and, as a result, "the unsuccessful bidder was not entitled to an injunction, absent fraud or abuse of discretion by the district, to invalidate the outcome of the RFP." Id. at 485.

**{¶51}** The *Wheeling Corp.* Court reached this conclusion despite the fact that the parties to that appeal urged diametrically opposed interpretations of the Ohio Supreme Court's holding in *Danis:*

**{¶52}** "Appellant asserts that the Ohio Supreme Court clearly held in *Danis* that, once a government entity issues an RFP, it is bound by the terms expressed therein and may not deviate in the slightest from those literal terms when rating proposals and negotiating with the finalist proposers. Appellees, to the contrary, rely on *Danis* for the proposition that modifications to an RFP which are done rationally, fairly, and in good faith, based upon the best interest of the parties when arriving at a mutually beneficial agreement, are within the discretion of the public agency issuing the RFP. Our interpretation of *Danis* lies between these extremes. Where the RFP in question provides for discretion on the part of the issuing authority, pursuant to *Danis*, absent fraud or abuse of discretion, the issuing authority may vary the terms of the ultimate agreement from the original guidelines of the RFP. Where the RFP

explicitly forecloses variance, however, we read *Danis* as requiring adherence to the terms of the RFP when executing the resulting contract." Id.

**{¶53}** It is clear from the plain language of the RFP before us that Appellee contemplated negotiations following the issuance of the RFP, and that, like the process in *Danis*, "the RFP contemplated an award solely of the opportunity to *further* negotiate to reach a possible contract" with the county. (Emphasis in original.) Id. at 600. Even though the RFP contained certain elements of competitive bidding, e.g., sealed bids, bid bonds, performance bonds, and public opening of bids, the use of components of competitive bidding does not convert the RFP into a request for competitive bids. Id. at 603. Therefore, the trial court erred as a matter of law in concluding that the RFP at issue was a request for competitive bids, and Appellee's reliance on Article 4.1 of the lease to void the lease pursuant to *Checie* is meritless.

**{¶54}** Further, even though Article 4.1 of the lease is contrary to law, and, therefore, unenforceable, the lease itself is not void as a matter of law. *See Morrow Cty. Airport Auth. v. Whetstone Flyers, Ltd.*, 112 Ohio St.3d 419, 2007-Ohio-255, 860 N.E.2d 733, ¶9 ("The court of appeals cites the Eleventh District Court of Appeals for the proposition that contracts made in violation of state statute or in disregard of such statutes are void. See *Benefit Servs. of Ohio, Inc. Trumbull Cty. Commrs.*, 11th Dist. No. 2003-T-0045, 2004-Ohio-5631, ¶33. But neither the General Assembly nor this court has ever made such a declaration.") Based on all of the above, Appellant's second assignment of error is sustained, as well.

**{¶55}** Finally, it is important to note that, in Ohio, a lessor has a duty to mitigate damages caused by a lessee's breach of a commercial lease if the lessee abandons the leasehold. *Frenchtown Square Partnership v. Lemstone, Inc.*, 99 Ohio St.3d 254, 2003-Ohio-3648, paragraph one of the syllabus. The lessor's efforts to mitigate must be reasonable, and the reasonableness should be determined by the trial court. Id., at paragraph two of the syllabus. It appears on the record that Appellant mitigated their damages, at least in part, insofar as MCESC executed a lease with Appellant on July 19, 2007 for separate office space at Southwoods, but enough facts do not appear of record for this Court to make any final determination on the issue of damages. Therefore, the matter must be sent back to the trial court.

**{¶56}** Accordingly, Appellant's assignments of error are sustained, and the judgment of the trial court is reversed. This matter is remanded to the trial court on the issue of damages.

Donofrio, J., concurs.

DeGenaro, J., concurs.